EDWARD M. JOSEPH, Respondent, v NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND et al., Appellants.

Fourth Department, December 14, 1979

## APPEARANCES OF COUNSEL

*Peter P. Paravati, P. C.,* for appellants.

*Kalil & Kalil (Waddie Kalil* of counsel), for respondent.

## OPINION OF THE COURT

SCHNEPP, J.

Plaintiff, Edward M. Joseph, brought this action to obtain a determination of his rights and benefits under the terms of the New York State Teamsters Conference Pension and Retirement Fund ("plan") which became effective January 1, 1954.

The plan, established pursuant to collective bargaining agreements reached between a number of local unions of the International Brotherhood of Teamsters and employers in the trucking and allied industries participating in the plan, is designed to provide pensions for employees represented by any of the local unions and employed by employers participating in the plan. To be eligible for pension benefits employment with an employer having a collective bargaining agreement with the union ("participating employer") is essential. The plan permits retirement at described ages provided the employee has at least 15 years of credited service. Responsibility for the general administration of the plan is placed in a board of trustees having equal representation from the local unions and participating employers. Contributions to the plan are made solely by participating employers.

Plaintiff, born on June 19, 1914, was a member of the Teamsters Local Union at all relevant times. He worked as a trucker from 1937 to 1950 with various employers, most of whom had contracts with the union. In 1950 he commenced working for the Mutual Box Board Co. ("Mutual"). He worked continuously for Mutual and its successors until 1976, when, after working 38 years in the trucking industry, he applied for retirement.

At trial no evidence was presented concerning the existence of a written collective bargaining agreement between Mutual and its employees until March 5, 1963, when Mutual finally entered into a written collective bargaining agreement with the local union. The agreement, which specifically covered the period from August 1, 1961 to July 31, 1964, consisted of a printed form prepared by the union; only the employer's name and the local union's number are inserted in the form agreement. Mutual thereby agreed to contribute to the plan effective August 1, 1961, although it had made pension contributions since July 5, 1959. The employees of Mutual believed that they were covered under the plan at all times. On March 5, 1963 Mutual and the trustees of the plan also executed a

form stipulation detailing the amount of Mutual's pension contributions effective on August 1, 1961 and August 1, 1963 and the penalties on default and other relevant conditions concerning the employer's obligations under the plan. The minutes of a meeting of the trustees held on January 22, 1963 indicate: (1) that a letter from Mutual expressed a desire to sign a labor agreement with respect to pension contributions retroactive to January 1, 1954, (2) that Mutual had previously indicated its willingness to sign such an agreement, had neglected to do so, but nevertheless had been making periodic payments, although they were presently delinquent $7,069.38, an amount which Mutual agreed to pay in weekly installments of $100 over a period of 18 months, and (3) that the trustees unanimously granted Mutual permission to pay the arrearages in that manner. Under date of March 8, 1963 a Mutual check for $1,000 was transmitted to the trustees who posted it with the following notation: "Payment on account for Retirement & Pension Fund Two (2) payments representing February & March as agreed". The payment was credited to the pension contribution of Mutual for the year 1954. No further payment for arrearages was made by Mutual, which became bankrupt in 1965. On April 25, 1963 pension contributions were machine posted on plaintiff's permanent record card maintained by the trustees for the years 1954 through 1959 inclusive. These entries, except for the 1954 credit, were later crossed out and the notation "Not Paid" inserted in longhand. No explanation for this conduct was offered. Monthly employer reports maintained by the trustees for Mutual indicate that pension contributions were not made before 1959.

When plaintiff applied for his pension, the trustees advised him that he could only be given credit for 17.4 years of service dating back to 1959. They refused to credit plaintiff with any service prior to 1959, pointing out that although his account was credited for 1954 (and possibly 1955) his membership in the plan ceased because Mutual made no contribution to the plan for its employees and was not a participating employer for the years 1956, 1957 and 1958. Under the plan, membership ceases if the member is not employed by a participating employer for a period of three years after January 1, 1954.

The trial court sustained plaintiff's claim that he was entitled to a pension based on his total years of service. It determined that, although Mutual did not make pension

contributions on behalf of its employees from 1954 to 1959 and there was no evidence of written collective bargaining agreements during the years 1954-1961, there was "a clear understanding of the parties" that the employer was obligated to make the payments continuously from 1954 onward and that plaintiff was entitled to credit for those years as well as the years prior to 1954 during which he worked for qualifying employers. The court further held that the trustees were under a duty to collect the sums due from Mutual and their neglect could not defeat plaintiff's right to his pension. The trustees appeal from this determination and assert that plaintiff is only entitled to contribution and credit for his years of service from 1959 to 1976.

Section 302 of the Labor Management Relations Act (US Code, tit 29, § 186) prohibits an employer from making payments of money to an employee or representative of employees, except that employer contributions to pension funds are permitted provided "the detailed basis on which such payments are to be made is specified in a written agreement with the employer" (US Code, tit 29, § 186, subd [c], par [5], cl [B]). This law, which seeks to prevent corruption and fraud, must be strictly complied with and contributions may only be accepted by the trustees of a pension fund from employers who have a written agreement as required by the act *(Moglia v Geoghegan,* 403 F2d 110, cert den 394 US 919).

The trial court erred in holding impliedly that under the circumstances of this case the absence of a written document is immaterial. Plaintiff did not become a member of the plan until August 1, 1961 when Mutual became a participating employer by executing the written agreement between it and the union. The letter written by Mutual to the trustees before their meeting of January 22, 1963 and their action in granting Mutual permission to pay pension contribution arrearages in weekly installments cannot be construed as a written agreement setting forth the detailed basis requiring pension contributions retroactive to January 1, 1954 and does not have the effect of making plaintiff a member of the plan on that date. The plan itself makes no provision for retroactive contributions and the action of the trustees in agreeing to accept installment payments cannot be considered an amendment to the plan (see *Thurber v Western Conference of Teamsters Pension Plan,* 542 F2d 1106).

Nevertheless, the trustees credited plaintiff for 1959 and

1960 during which Mutual actually made pension contributions, even though no collective bargaining agreement had been effectuated. They also credit him for the year 1954 by applying the $1,000 payment made under date of March 8, 1963 after the agreement had been executed. This apparent gratuity artificially creates the alleged break in service for the years 1956 to 1958 during which plaintiff was not employed by a participating employer. This three-year break in service, claim the trustees, constitutes a break in membership and strips the plaintiff of credit for all service prior to 1959 including 11 years of service from 1939 to 1954. While unquestionably a break-in-service provision in a trust agreement serves a valid purpose to safeguard the fund from depletion for the benefit of active members who will apply for benefits in the future, trustees may not act unreasonably and "may not arbitrarily and capriciously deny benefits" (*Mitzner v Jarcho,* 44 NY2d 39, 45; see, also, *Roark v Lewis,* 401 F2d 425, 428; *Burroughs v Board of Trustees of Pension Trust Fund for Operating Engineers,* 542 F2d 1128, cert den 429 US 1096). There was no sound reason why the retroactively applied credit could not have been applied to any of the other years between 1954 and 1958 and we must conclude that in crediting the amount to the year 1954, the effect of which was to withhold benefits from plaintiff, the trustees acted arbitrarily. In any event, plaintiff cannot be treated as a member for 1954 for the simple reason that it was illegal under the act for the trustees to accept contributions for that year, and their acceptance was void. Furthermore, since plaintiff first became a member of the plan in 1961, the break-in-service rule does not apply because the period of the break occurred before he became a member.

The trustees have stipulated that plaintiff is entitled to credit for 17.4 years including part of 1959. A stipulation made in open court is enforceable under CPLR 2104. "Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them but which the courts are bound to enforce" (*Pines v Beck,* 300 NY 181, 187). "The agreement of the parties to thus limit judicial inquiry is binding upon the courts" (*Matter of Di Donato v Rosenberg,* 230 App Div 538, 541-542; see, also, *Ragen v City of New York,* 45 AD2d 1046). The parties in this case have agreed to limit judicial inquiry to the pre-1959 years, and thus the court need not inquire further. Although

it might be argued that the stipulation permitting plaintiff to receive payments for a period of time not covered by an agreement is void as against public policy, there is no basis upon which a finding could be made that payments to the pension fund for 1959, 1960, and 1961 "could provide an unintended loophole for the unscrupulous, and could result in a diversion of funds away from the proper parties" (Moglia v Geoghegan, 403 F2d 110, 116, supra). Indeed, it would not appear to be against public policy to permit an employer to make pension contributions during the interval before the collective bargaining agreement was formally signed (see Moglia v Geoghegan, supra, p 118, n 6; see, also, Hinson v National Labor Relations Bd., 428 F2d 133, 139).

Because he became a member of the plan after January 1, 1954, plaintiff may also receive credit for the years of service with a qualifying employer prior to 1954. The plan provides a credit for past service as follows:

"(2) A member who becomes a member after January 1, 1954 shall be entitled to credit for service as an Employee, as above defined, pursuant to (a) or (b) of this subsection, only for the time spent in the employ of one or more Participating Employers in contractual relations with the Union, provided on January 1, 1954, or the Applicable Effective Date, whichever shall later occur, he was an Employee of the class for whom Contributions have been made since January 1, 1954. Such service shall be credited for the following periods and the member shall have the right to designate the alternative of his choice:

"(a) Credit for service prior to January 1, 1954.

"(b) Credit for service prior to the Applicable Effective Date, as above defined."

The term "member" refers to an employee of a participating employer, who, as noted above, is one who has a collective bargaining agreement with the union and is authorized by the trustees to participate in the plan. Thus, Mutual became a participating employer in 1961 when the agreement and stipulation became effective. The "Applicable Effective Date" is defined in the plan as the date after January 1, 1954 on which a participating employer shall first become obligated to make and does make contributions to the fund, i.e., 1961. Under the plan the only reasonable option available to plaintiff is to select credit for service prior to January 1, 1954.

Thus, plaintiff may get credit under the plan for the years prior to 1954 but not for the years from 1954 to 1959.

This determination is buttressed by the trustees' interpretation of the plan as contained in an official brochure which not only sets forth the provisions of the plan but also provides illustrations of applications of the plan. One illustrating example states that if the employee worked for an employer from 1938 to 1963, and the employer first participated in the plan in 1961, the employee will be given credit for service from 1938 to 1954 and from 1961 to 1963. Thus, even the trustees conclude that an employee may receive credit for years worked prior to 1954 and subsequent to 1961 even though his employer did not contribute during the period of 1954 to 1961.

The trustees have stipulated that prior to 1954 four of plaintiff's employers qualified plaintiff for service credit. The proof reflects that he worked for those employers during 1939 through 1945, a total of seven years. He worked for Mutual during 1950 to 1953 inclusive. Mutual became a participating employer in 1961, and thus plaintiff qualified for these four years of service. Contrary to the trustees' contention the break-in-service rule does not apply to service prior to 1954. Although the example in the brochure describes an employee who worked for a qualifying employer continuously, the plan itself does not impose such a requirement. Furthermore, the brochure states that nothing therein shall alter the terms of the plan. Since there is simply no provision in the plan that the break-in-service rule applies before 1954, we hold that the plaintiff must be given a past service pension credit for these 11 years.

As we have found, the trustees arbitrarily credited the $1,000 paid on March 8, 1963 as a contribution to the plan for the year 1954. In *Moglia (supra,* p 114) the court noted that the illegal payments had been refunded to the employer but were declined. Here, a refund is not possible because the employer is bankrupt. The plan provides that "[a] member for whom Contributions are made by a Participating Employer shall be entitled to credit for participation in the Plan for *all monies* contributed on his behalf." (Emphasis added.) The $1,000 payment here was made to an existing fund by a participating employer on behalf of its employees. A direction that the payment be applied as a credit for the employees of Mutual does not violate the spirit of section 302 of the Labor Management Relations Act or contribute to the abuses the

section was designed to eliminate. Under these circumstances "there is no need to invoke the safeguards of this statute" *(National Labor Relations Bd. v United Brotherhood of Carpenters & Joiners of Amer.,* Local No. 1913, AFL-CIO, 531 F2d 424, 427). We hold that plaintiff is thereby entitled to credit for participation in the plan for an additional year of service. We find that plaintiff's credited service totals 29.4 years.

Accordingly, the judgment appealed from should be modified in accordance with this opinion and, as so modified, affirmed, with costs to plaintiff.

DILLON, P. J., CARDAMONE, CALLAHAN and WITMER, JJ., concur.

Judgment unanimously modified and, as modified, affirmed, with costs to plaintiff, in accordance with opinion by SCHNEPP, J.