Yale CITRIN, in his capacity as an Association Trustee for the Joint Apprentice and Training Program of the Elevator Industry, and on behalf of all of the Association Trustees, Petitioners,

v.

Christopher ERIKSON and James O'Hara, as Union Trustees of the Joint Apprentice and Training Program of the Elevator Industry, Respondents.

No. 95 Civ. 9004 (DNE).

United States District Court, S.D. New York.

Jan. 10, 1996.

Michael J. DiMattia, Donald S. Krueger, Ross & Hardies, New York City, Norman Rothfeld, New York City, for Petitioner.

## OPINION & ORDER

EDELSTEIN, District Judge.

The instant petition arises under the provisions of section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and section 302(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c). The parties to this action are the two groups of trustees who jointly administer a multi-employer and union apprentice plan to provide training for the exclusive benefit of individuals interested in working in the elevator industry. Petitioners [1] are the trustees appointed by the employers ("Petitioners" or "Association Trustees"), and Respondents are the trustees appointed by the union ("Respondents" or

"Unions Trustees"). The instant petition arises because of a disagreement between the Association Trustees and the Union Trustees over whether to approve a new apprenticeship class.

Petitioner Yale Citrin ("Citrin"), in his capacity as an Association Trustee for the Joint Apprentice and Training Program ("the JATP") of the Elevator Industry, and on behalf of all JATP Association Trustees, requests this Court to appoint an impartial trustee to resolve a dispute between Petitioners Association Trustees and Respondents Union Trustees of the JATP. Petitioners request that this Court: (1) issue an immediate order appointing an impartial trustee to break the deadlock and directing the impartial trustee to vote on the issue on which the JATP Trustees are deadlocked; (2) direct the parties to submit their dispute regarding the selection of an impartial trustee to the American Arbitration Association ("AAA"), or, alternatively, direct the parties to exchange lists of names of neutral individuals from which a neutral trustee will be chosen; (3) award Petitioners attorneys' fees, costs, and disbursements; and (4) direct that JATP funds be used to reimburse Petitioners for their reasonable attorneys' fees and costs.

Respondents Union Trustees raise several claims in opposition to Petitioners' requests. The Union Trustees argue that: (1) this Court should not grant the Association Trustees' petition; (2) an impartial umpire appointed pursuant to this petition would lack power to resolve the dispute between the two groups of Trustees; (3) that Petitioners' claims of injury lack merit; and (4) that this Court should not submit any matter arising from this dispute to the AAA. Respondents move this Court for summary judgment, pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), to dismiss the petition.

Because Petitioners have satisfied the prerequisites for requesting a court-appointed impartial trustee, and because Respondents have failed to demonstrate that they are entitled to a judgement as a matter of law,

---

1. Because Petitioner Citrin has brought the instant petition on behalf of the Association Trustees and because Citrin refers to the moving party in this case as "Petitioners," this Court will refer to the moving party in this case as "Petitioners."

the instant petition is granted, and Respondents' Rule 56 motion is denied. In addition, this Court orders further procedures for counsel to follow in resolving this dispute.

## BACKGROUND

The instant petition concerns the administration of a trust fund established pursuant to the LMRA and ERISA. This trust fund was created and is jointly administered by the Elevator Industries Association, Inc. ("the Association") and Local Union No. 3 International Brotherhood of Electrical Workers ("the Union"). The Association is a not-for-profit corporation that performs various services for its employer-members, who service, repair, and modernize elevators. (Petition to Appoint an Impartial Trustee Pursuant to 29 U.S.C. § 185(c), 95 Civ. 9004 ("Pet.") at 3.) These services include negotiating collective bargaining agreements with local unions on behalf of the Association's members. *Id.* The Union is one of these local unions. *Id.*

The Union is a labor organization within the meaning of 29 U.S.C. § 152(5)[2] and is the exclusive bargaining representative of certain employees employed by the Association's constituent members. *Id.* For an unspecified number of years, the Association and the Union have been parties to successive collective bargaining agreements. (Petitioners' Memorandum of Law in Support of the Association Trustees' Petition to Appoint an Impartial Trustee Pursuant to 29 U.S.C. § 186(c) ("Pets.Memo") at 2.)

Pursuant to the collective bargaining agreement between the Association and the Union, (Agreement and Working Rules Between Elevator Industries Association, Inc. and Local Union No. 3 International Brotherhood of Electrical Workers, 1993–1996 Art. XXIX(a) ("the Collective Bargaining Agreement" or "CBA")), the parties entered into a trust agreement in 1976 that created the Joint Apprenticeship Training Program. (Trust Agreement Creating the Apprenticeship and Training Program for the Elevator Industry 1 ("the Trust Agreement").) "The basic idea of an apprenticeship program is to allow on-the-job training for apprentices who work under the supervision of journeymen and thus encourage and assist persons to enter the skilled work force throughout the nation." *Electrical Joint Apprenticeship Comm. v. MacDonald,* 949 F.2d 270, 274 (9th Cir.1991); *see Joint Apprenticeship and Training Council of Local 363, International Brotherhood of Teamsters,* 829 F.Supp. 101, 103 (S.D.N.Y.1993). As set forth in the Trust Agreement in this case, the JATP established an apprentice school

> for the benefit of the elevator industry and to help meet its staffing needs by providing and maintaining training and/or retraining programs for the benefit of Employees, or persons who wish to become Employees, ... and to devise and implement such programs as may be necessary from time to time to fulfill these objectives.

(Trust Agreement Art. III, ¶ 3.1.) The JATP is supported by a trust fund to which the Association's employer-members contribute a percentage of their gross weekly production payroll. (CBA Art. XXIX(b)); (Trust Agreement Art. IV, ¶ 4.1.)

The disagreement underlying the instant petition concerns a dispute between the Association Trustees and the Union Trustees over the commencement of a new JATP apprenticeship class. (Pets.Memo at 4); (Respondents' Memorandum of Law in Support of Respondents' Motion for Summary Judgment Dismissing the Petition ("Resps.Memo") at 2.) Petitioners claim that "[f]or about a year, the Union Trustees have adamantly refused to permit a first-year apprenticeship class to begin unless and until a longstanding provision of the collective bargaining agreement between the Union Trustees and the Association is changed." (Letter from Yale Citrin, Association Trustee of the JATP, to Christopher Erikson 1 (Sept. 26, 1995) ("Citrin Letter")); *see* (Pet. at 5.) On September 6, 1995, Petitioners submitted a resolution to the Union Trustees "to take the

---

**2.** This section defines "labor organization" as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).

necessary steps to commence a first-year apprentice class" of at least twenty-five individuals by September 1995. (Citrin Letter at 1); *see* (Pet. at 4.) Along with this resolution, the Association Trustees presented a preliminary list of individuals to be enrolled in this class and proposed that the Trustees as a group consider other qualified individuals who applied to the JATP by September 1995. (Citrin Letter at 2.)

Petitioners claim that the Union Trustees refused to agree to this resolution. (Pet. at 4.) They assert that, as a result of this refusal, "the apprenticeship program has not been able to fulfill its function and mission of training individuals to work in the elevator industry." (Pets.Memo at 2–3.) In an effort to resolve this dilemma, Petitioner Citrin wrote to Union Trustee Christopher Erikson on September 26, 1995, outlining the history of the dispute, repeating the text of the September 6, 1995, resolution, and alerting the Union Trustees that their "action constitutes a breach of their fiduciary responsibility under the Trust Agreement" and a violation a ERISA that could expose the Trust and its trustees to "significant liability." (Citrin Letter at 1.) Citrin concluded this letter by informing Erikson that the Association Trustees "strongly suggest[ed] that the parties use the services of the American Arbitration Association to seek an arbitrator to serve as the impartial trustee," and by advising Erikson that if the Union Trustees did not respond to the September 26, 1995, letter by October 4, 1995, the Association Trustees intended to petition this Court to appoint an impartial arbitrator. *Id.* at 2.

Petitioners claim that the Union Trustees have refused to cooperate with the Association Trustees in appointing a neutral arbitrator to break this deadlock. (Pet. at 5.) They contend that this lack of cooperation has caused serious harm to individuals seeking admission to the JATP, has prevented the JATP from fulfilling its mission, and has subjected the Trustees to potential liability for breaching their fiduciary obligations under the Trust. *Id.* at 5–6; (Pets.Memo at 3.) Accordingly, Petitioners request that this Court appoint an impartial trustee to break the deadlock on this issue. (Pet. at 6); (Pets.

Memo at 3.) They assert that this Court has jurisdiction over their petition under section 302 of the LMRA, 29 U.S.C. § 186(c), section 502 of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1337. (Pet. at 2.)

In response to the Petition, Respondents Union Trustees move for summary judgement, pursuant to Rule 56, arguing that this Court should dismiss the petition. Unfortunately, it has been very difficult for this Court to ascertain the basis on which Respondents seek summary judgment because Respondents' papers are so poorly drafted that they are in turn ambiguous, cryptic, and unintelligible. Despite these deficiencies in Respondents' papers, this Court patiently, painstakingly, and persistently examined Respondents' papers in order to extract their version of the facts.

As an initial matter, Respondents do not dispute the facts set forth in Petitioners' papers. Moreover, Respondents admit to the existence of a dispute between the Association Trustees and the Union Trustees regarding the appointment of a new apprenticeship class. (Resps.Memo at 2, 6–7.) They also concede that the two groups of trustees have been unable to agree to appoint an impartial umpire, and Respondents confirm the absence of an agreed-upon neutral person to break the deadlock. *Id.* at 8. Respondents, however, allege additional facts that they claim are both relevant to this dispute and fatal to Petitioners' case.

First, Respondents assert that the parties' dispute concerns an issue beyond the appointment of a new JATP apprenticeship class—the interpretation of the Collective Bargaining Agreement regarding the amount of wages paid to Union members. *Id.* at 2, 4. They assert that Association employers hired forty-five employees at the "wage rate applicable to beginning apprentices" under the CBA "instead of the higher wage rate payable to 'A' Elevator Helpers," and Respondents contend that Petitioners now seek to have these employees appointed as JATP apprentices by the impartial umpire. *Id.* at 2. Respondents allege that Petitioners' are improperly attempting to select all the JATP apprentices without input from the Union Trustees. *Id.* at 2–3. Respondents further

claim that Petitioners justify their actions on the grounds "that depriving them of the right to select all the apprentices would require a change in the collective bargaining agreement," and Respondents assert that Petitioners' defense is untenable because "[t]he CBA provision relating to the hiring of employees makes no reference ... to the selection of persons as apprentices." *Id.* at 3. Consequently, Respondents characterize the instant petition as an attempt by Petitioners to impede the Union's lawful efforts to resolve the CBA dispute through contract arbitration. *Id.* at 2, 4.

Second, Respondents claim that the parties' dispute also concerns affirmative action. They assert that the New York State Department of Labor ("NYSDOL") "halted the appointment of any more apprentices unless and until the employers and the Union agree upon and submit an Affirmative Action program." *Id.* at 2–3. They also allege that the JATP as currently organized violates NYSDOL regulations and that although Petitioners can conduct apprentice classes without NYSDOL approval, Petitioners "cannot compel the Respondents to agree to them." *Id.* at 6. Respondents contend that they reject an affirmative-action program proposed by Petitioners because the program empowers Petitioners to make all decisions regarding the appointment of apprentices, including decisions to reject "any and all of the unemployed union members on the roster of the elevator industry's hiring hall, and also to reject any and all minority and female applicants...." *Id.* Respondents maintain that their refusal to appoint a new JATP class until Petitioners agree to correct these violations is appropriate because Respondents have "50% of the responsibility for complying with Federal and State Civil Rights laws with respect to the [JATP]...." *Id.* at 3.

Finally, Respondents accuse the Association of wrongdoing that justifies Respondents' refusal to appoint a new JATP class. Respondents contend that Association members are not funding the JATP as required by the CBA and the Trust Agreement because "employers' contributions fund primarily the Joint Employment Office, with no segregated fund for their apprentice training

program." *Id.* at 7. In addition, Respondents charge that Petitioners are discriminating against, and "seriously harming," unemployed Union members, women, and minorities who are eligible for the JATP. *Id.*

The parties do not contest the fact that the JATP was created in accordance with section 302(c)(5)–(6) of the LMRA, 29 U.S.C. § 186(c)(5)–(6). (Pet. at 2.) Congress enacted the LMRA in 1947 "to prescribe the legitimate rights of both employees and employers in their relations affecting commerce," and "to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce...." 29 U.S.C. § 141(b). The LMRA reflected congressional "concern[ ] with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power they might achieve if welfare funds were left to their sole control." *Arroyo v. United States,* 359 U.S. 419, 425–26, 79 S.Ct. 864, 868–69, 3 L.Ed.2d 915 (1959). Some of the LMRA's drafters focused particularly on the latter problem because they feared that without specific statutory protections, employee benefit and welfare trust funds would become "war chests" to support particular union programs, political factions, or the private interests of union leaders. *United Mine Workers of America Health and Retirement Funds v. Robinson,* 455 U.S. 562, 571 n. 9, 572, 102 S.Ct. 1226, 1232 n. 9, 1232, 71 L.Ed.2d 419 (1982). To prevent such abuses, Congress adopted LMRA section 302. *National Labor Rel. Bd. v. Amax Coal Co.,* 453 U.S. 322, 331, 101 S.Ct. 2789, 2795, 69 L.Ed.2d 672 (1981).

LMRA section 302 restricts financial transactions between employers and employees, employee representatives, and employee labor organizations in order to free the collective bargaining process from bribery and extortion. 29 U.S.C. § 186; *Arroyo,* 359 U.S. at 425–26 & nn. 6–8, 79 S.Ct. at 868–69 & nn. 6–8. The statute prohibits an employer from making payments to any employee or representative of employees, 29 U.S.C. § 186(a); *Amax Coal,* 453 U.S. at 328, 101 S.Ct. at 2793–94; *Joseph v. New York State*

*Teamsters Conference Pension and Retirement Fund,* 71 A.D.2d 446, 422 N.Y.S.2d 984, 987 (1979), *appeal denied,* 49 N.Y.2d 703, 426 N.Y.S.2d 1027, 403 N.E.2d 459 (1980), and bars individuals, labor organizations, and labor representatives from demanding or accepting payments from employers. 29 U.S.C. § 186(b). LMRA section 302(c), however, carves out limited exceptions to this prohibition to permit "legitimate" financial transactions between management and labor, such as the sale or purchase of a commodity in the regular course of business, 29 U.S.C. § 186(c)(3), and wage deductions for the payment of union membership dues. 29 U.S.C. § 186(c)(4). The most notable of these exceptions concerns employee benefit and welfare plans.

Section 302(c)(5) authorizes an employer to contribute to certain types of employee benefit and welfare plans. Under section 302(c)(5)(B) of the LMRA, an employer may contribute money to such a fund provided that

> the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in the event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office....

29 U.S.C. § 186(c)(5)(B); *see Amax Coal,* 453 U.S. at 328, 101 S.Ct. at 2793–94; *Joseph,* 422 N.Y.S.2d at 987. The LMRA specifically authorizes trust funds established for the purpose of "defraying costs of apprenticeship or other training programs." 29 U.S.C. § 186(c)(6). Moreover, the Employee Retirement Income Security Act in part defines an "employee welfare benefit plan" as any plan, fund, or program established or maintained by an employer, an employee organization, or by both, for the purpose of providing its participants or their beneficiaries with "apprenticeship or other training programs, ... or ... any benefit described in section 302(c) of the Labor Management Relations Act...." 29 U.S.C. § 1002(1)(A)–(B).

In keeping with both Congressional intent and statutory language, the JATP is memorialized in a written agreement between the Association and the Union, *see generally* (CBA); (Trust Agreement), and sets forth the specific basis on which Association members contribute to the Trust. (CBA Art. XXIX(b)); (Trust Agreement Art. IV, ¶ 4.1.) The JATP is administered by six Trustees, three appointed by the Association and three appointed by the Union. (Trust Agreement Art. II, ¶ 2.8; Art. VII, ¶ 7.1.)

## DISCUSSION

As an initial matter, this Court must establish that it has subject matter jurisdiction to hear the instant dispute. If this Court has jurisdiction over this dispute, this Court must examine the substantive law on which Petitioners' claim is based, evaluate the facts of the case and the parties' respective claims, and review the standard for summary judgement by which Respondents' motion is judged. Following this analysis, this Court will address Petitioners' request for costs and attorneys' fees.

### A. Jurisdiction

Association Trustees predicate this Court's jurisdiction over their petition on three different statutes—section 302 of the LMRA, 29 U.S.C. § 186, section 502 of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1337. A brief review of these statutes demonstrates that each confers jurisdiction upon this Court to review the instant petition.

█ Section 302(e) of the LMRA empowers a district court to restrain violations of section 302 relating to the administration of employee welfare and pension plans. 29

U.S.C. § 186(e); *Robinson,* 455 U.S. at 568 n. 6, 102 S.Ct. at 1230 n. 6; *Giraldo v. Rosen,* 355 F.Supp. 54, 56 (S.D.N.Y.1973). A disagreement between union and management trustees of a pension or welfare trust that requires the appointment of an impartial umpire under section 302(c) falls within the scope of this jurisdiction. *Trustees of the Joint Welfare Fund of the Int'l Union of Operating Engineers, Local Unions, 14, 14B, 15, 15A, 15C, 15D v. Nolan,* 549 F.2d 871, 872 (2d Cir.1977); *Singleton v. Abramson,* 336 F.Supp. 754, 755 (S.D.N.Y.1971). Pursuant to section 302(c), Petitioners request an impartial umpire to resolve a deadlocked dispute among the trustees of an employee benefit fund. Accordingly, this Court finds that it has jurisdiction over the instant petition under LMRA section 302.

■ Section 502 of the Employee Retirement Security Income Act creates a right for civil enforcement of ERISA violations independent from that of the LMRA. *Leonardis v. Local 282 Pension Trust Fund,* 391 F.Supp. 554, 556–57 (E.D.N.Y.1975). In relevant part, ERISA section 502(a)(3) permits a pension-fund fiduciary to bring a civil action in federal court to obtain appropriate equitable relief to redress violations of ERISA or to enforce the terms of a specific employee benefit or welfare plan. 29 U.S.C. § 1132(a)(3)(B)(i)–(ii); *Botto v. Friedberg,* 568 F.Supp. 1253, 1254 (E.D.N.Y.1982). In the instant case, the JATP is an employee benefit plan within the meaning of ERISA, 29 U.S.C. §§ 186(c), 1002(1); *Hydrostorage, Inc. v. Northern California Boilermakers Local Apprenticeship Comm.,* 891 F.2d 719, 727–28 (9th Cir.1989), *cert. denied,* 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990), and both the Union Trustees and the Association Trustees are fiduciaries with the right to bring suit under this section. *See* 29 U.S.C. 1002(21)(A); *Trustees of the Four Joint Bds. of Health and Welfare and Pension Funds v. Penn Plastics, Inc.,* 864 F.Supp. 342, 344 n. 1 (S.D.N.Y.1994); *New York State Teamsters Council Health and Hospital Fund v. Estate of DePerno,* 816 F.Supp. 138, 144–45 (N.D.N.Y.1993). Furthermore, Petitioners seek to enforce the provision of the JATP Trust Agreement authorizing the appointment of an impartial umpire by a federal district court, and they allege that Respondents have failed to fulfill Respondents' fiduciary duties as administrators of the JATP. (Pet. at 5–6.) Because Petitioners as fiduciaries seek equitable relief to enforce a term of the JATP benefit plan, and allege that Respondents have violated their fiduciary duties under ERISA, this Court has jurisdiction over the instant petition pursuant to ERISA section 502.

■ Title 28, United States Code, section 1337 provides a federal district court with "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce...." 28 U.S.C. § 1337. It is well settled that both the LMRA and section 302 of the LMRA are acts of Congress regulating commerce within the meaning of section 1337. *Ader v. Hughes,* 570 F.2d 303, 306 (10th Cir.1978); *Leonardis,* 391 F.Supp. at 556; *Singleton,* 336 F.Supp. at 754; *Francis H. Leggett & Co. v. O'Rourke,* 237 F.Supp. 561, 562 (S.D.N.Y.1964). Consequently, this Court has jurisdiction over the instant petition.

### B. LMRA § 302(c)

■ As previously discussed, section 302(c) mandates the selection of an impartial umpire in the case of an unresolvable disagreement among trustees of a benefit fund, and this section provides that, in the event the trustees are unable to agree upon an umpire, they may petition the district court to appoint one for them. 29 U.S.C. § 186(c)(5)(B). A party invoking this provision "must satisfy the court that (a) a genuine deadlock exists on an issue of administration, (b) no agreed neutral person is available to break the impasse, [and] (c) the parties fail to agree on an impartial umpire." *Singleton,* 336 F.Supp. at 757. Determining what constitutes an "issue of administration" of a trust has preoccupied courts and litigants alike, and presents the central issue of the instant petition.

■ This Court's research reveals that at least four circuits have considered what constitutes an issue of trust administration, generating at least three different conclusions. *See Hawkins v. Bennett,* 704 F.2d 1157 (9th

Cir.1983); *Farmer v. Fisher*, 586 F.2d 1226 (8th Cir.1978); *Ader v. Hughes*, 570 F.2d 303 (10th Cir.1978); *Mahoney v. Fisher*, 277 F.2d 5 (2d Cir.1960). The Second Circuit defines an issue of trust administration as any issue which the trustees have authority to decide under the trust agreement. *Mahoney*, 277 F.2d at 6; *Barrett v. Miller*, 276 F.2d 429, 431 (2d Cir.1960); *Singleton*, 336 F.Supp. at 757. Moreover, a trustee petitioning for the appointment of an impartial umpire need not demonstrate that the issue for which he requests the umpire is absolutely one of trust administration, but rather, he must establish that the issue is possibly one of trust administration. *Barrett*, 276 F.2d at 431. As one court noted, "[u]nder this broad interpretation the only dispute for which an arbitrator could not be appointed is one in which the trustees attempted to exceed their powers under the trust." *Hawkins*, 704 F.2d at 1160 (citing *Barrett v. Miller*, 276 F.2d 429 (2d Cir.1960)). According to the District Court in *Singleton*, a more narrow interpretation of this requirement "would hamstring the continued operation of the [trust] and defeat the intention of Congress in providing for court-appointed umpires." *Singleton*, 336 F.Supp. at 758.

In support of the instant petition, the Association Trustees claim to have satisfied each of the *Singleton* requirements. They claim that "[t]he parties are deadlocked on the administration of the JATP" (Pet. at 4.), and assert that this Court has the authority to appoint an impartial trustee to break this deadlock pursuant to their request, the Trust Agreement, and section 302(c) of the LMRA. *Id.* at 4; (Pets.Memo at 3.) They further allege that "[t]here is no agreed upon neutral person available to break the deadlock." (Pet. at 5.) Finally, Petitioners allege that a "reasonable length of time has passed since the parties deadlocked over the September 1995 proposal...." *Id.*

Most importantly, Petitioners devote considerable effort to arguing that the issue over which the parties are deadlocked involves the administration of the JATP Trust. Petitioners frame this issue as "the admission of potential candidates into the apprentice program." (Pets.Memo at 5); *see* (Pet. at 4);

(Pets.Reply Memo at 5.) They assert that the Trust Agreement empowers the JATP Trustees to commence an apprenticeship and training program and to formulate the program's standards for admission and conduct. (Pets.Reply Memo at 5 (citing Trust Agreement Art. IV, ¶ 1.18).) Petitioners also cite the Trust Agreement to demonstrate that the primary purpose of the JATP Trust is to recruit and select individuals capable of being trained to perform elevator repair and modernization. *Id.* (citing Trust Agreement Art. III ¶ 3.1(a)). Furthermore, Petitioners discuss the Collective Bargaining Agreement and stress that this document makes no reference to the selection of persons as apprentices. *Id.* at 6.

In opposition to the instant petition, Respondents raise several claims. They contend that the instant dispute concerns a matter beyond the power of an impartial umpire to resolve and proffer two theories in support of this contention. First, they claim that the "gravamen" of the instant dispute concerns the interpretation of the parties' Collective Bargaining Agreement, specifically, whether a group of employees is being paid wages in accordance with the terms of the CBA. (Resps.Memo at 2.) Respondents contend that this issue only can be resolved through arbitration, not by submission to the JATP Trustees and an impartial umpire. *Id.* at 2, 4–5. Respondents assert that this Court should not appoint an impartial umpire because the umpire would lack the authority to resolve the Collective Bargaining Agreement dispute. *Id.* at 2–4.

Second, Respondents claim that the instant dispute involves issues of federal and state labor law regarding affirmative action that also are beyond the scope of an impartial umpire's authority. They refer to the fact that the NYSDOL "halted the appointment of any more apprentices," *id.* at 2–3, and Respondents claim that because of the NYSDOL's action, an impartial trustee appointed pursuant to the instant petition "would lack power to compel the State of New York to Register the Petitioners' list of new Apprentices." *Id.* at 5. They also claim that under NYSDOL Regulations "[i]t is self evident that the Department of Labor, Division of

Apprentice Training has the right to require that both parties to a jointly administered apprenticeship program ... agree upon an Affirmative Action program before the Division approves any new Classes." *Id.* at 5. Because an impartial umpire could not require that the parties agree to an affirmative action program and could not make the NYS-DOL approve such a plan, Respondents contend that this Court should not appoint an impartial umpire. *Id.* at 6.

In addition to claiming that an impartial umpire appointed pursuant to the instant petition would lack the power to resolve the parties' dispute, Respondents also allege that Petitioners' claims of injury lack merit. *Id.* at 6. Respondents dispute Petitioners' assertion that the JATP Trust is not fulfilling its mission because "the employers' contributions fund primarily the Joint Employment Office, with no segregated fund for the apprentice training program." *Id.* at 7. Respondents also reject Petitioners' assertion that individuals seeking admission to the apprentice program are harmed because "the refusal of employers to accept as apprentices either unemployed union members or minorities and women ... is seriously harming *those* individuals." *Id.* at 7 (emphasis in original). Moreover, Respondents reject Petitioners' claim that the JATP trustees are subjected to potential liability for breaching their fiduciary obligations as a result of the instant dispute because "this potential liability is a figment of Petitioners' imagination" and because "employer trustees have absolved themselves of liability by bringing this procedure...." *Id.*

Petitioners respond to each of Respondents' claims in Petitioners' Reply Memorandum. First, Petitioners assert that the CBA dispute is a "red herring designed to distract the Court from the ministerial task of appointing an Impartial Trustee." (Pets.Reply Memo at 5.) They distinguish the issues underlying the instant petition—the appointment of a new JATP class pursuant to the JATP Trust Agreement—with the issue at the center of Union's dispute with the Association—the proper level of employee remuneration under the CBA. *Id.* at 5–6. Petitioners claim that these two issues are wholly unrelated. *Id.* at 5–6. Moreover, Petitioners explain that under relevant case law, an arbitrator selected pursuant to a collective bargaining agreement is without authority to decide matters outside the scope of the agreement, *id.* at 6 (citations omitted), and that trustees of an employee welfare or benefit fund can address only those matters that the relevant trust agreement authorizes them to address. *Id.* at 6–7 & n. 2 (citing *Botto v. Friedberg*, 568 F.Supp. 1253 (E.D.N.Y.1982)). Petitioners claim that only an arbitrator has the power to resolve the Union's wage dispute under the CBA, only the Trustees have the power to resolve the JATP dispute under the Trust Agreement, and that neither dispute affects the other. *Id.* at 7.

Further, Petitioners characterize Respondents' affirmative-action claims as "an attempt to disguise their true motive in deadlocking the dispute," namely effecting a "change in the collective bargaining agreement to eliminate an employer's right to select its own employees." *Id.* at 9–10. Petitioners bolster this assertion by explaining that approximately one-third of the new JATP class proposed by the Association Trustees is "an ethnically and racially mixed group of employees protected by the civil rights laws." *Id.* at 9. Petitioners further assert that "[w]hile Respondents' papers are less than clear," Respondents appear to believe "that the Petitioner is seeking to have an improper resolution passed; that the commencement of a proposed class would somehow violate the federal and state civil rights laws." *Id.* Petitioners describe this belief as "wholly frivolous and speculative" because "if the proposed resolution is so palpably improper, the Impartial Trustee will not vote in favor of the resolution." *Id.*

In order to resolve the parties' competing claims in accordance with relevant case law, this Court will address individually each prong of the test set forth in *Singleton v. Abramson.* As an initial matter, this Court reiterates that Respondents do not dispute the facts proffered by Petitioners in support of Petitioners' claim that the instant dispute concerns an issue of trust administration. Rather, Respondents offer their own set of competing facts that Respondents contend

entitles them to summary judgement. Consequently, this Court must analyze two sets of undisputed facts. Only the facts presented by Petitioners are germane to the instant dispute and Respondents' allegations, regardless of their merits, are irrelevant to the task Petitioners have placed before this Court.

### 1. Genuine Deadlock on an Issue of Administration

The central issue of the instant petition is determining whether "a genuine deadlock exists on an issue of administration" of the trust for which this Court can appoint an impartial umpire. *Singleton,* 336 F.Supp. at 757. Petitioners' assert that the JATP Trustees as a group are authorized to commence a new JATP apprenticeship class and that the Trustees' failure to agree to commence a new class constitutes a deadlocked issue of trust administration. To support this claim, Petitioners rely on the two documents that govern the parties' relations with respect to the JATP—the Collective Bargaining Agreement and the JATP Trust Agreement. After reviewing Petitioners' claim, the CBA, and the Trust Agreement this Court finds that Petitioners have demonstrated that the issue over which the Association Trustees and Union Trustees are deadlocked is one of trust administration for which this Court can appoint an impartial umpire pursuant to LMRA section 302(c) and the Trust Agreement.

The Collective Bargaining Agreement establishes the basic framework of the JATP. It authorizes the Association Trustees and the Union Trustees to create the JATP, provides for management of the JATP trust by an equal number of Association Trustees and Union Trustees, and sets forth the basis upon which Association employers contribute to the JATP trust. (CBA Art. XXIX (a)-(c).) The CBA contains no other rules, requirements, or guidelines for either the administration of the JATP itself or the conduct of its Trustees. Instead, the CBA orders that the JATP "shall be operated pursuant to the terms and conditions of the Trust Agreement," *id.* at Art. XXIX(a), a separate document.

The Trust Agreement fulfills the role the CBA contemplates. The Trust Agreement proclaims that the JATP's purpose is to "benefit the elevator industry and to help meet its staffing needs by providing and maintaining training and/or retraining programs" for present and future employees and "to devise and implement such programs as may be necessary from time to time to fulfill these objectives." (Trust Agreement Art. III., ¶ 3.1.) To further these goals, Article V of the Trust Agreement establishes the rights and duties of the JATP Trustees regarding the funding, administration, and organization of the JATP. Included among these rights and duties are three that speak directly to the scope of the Trustees' power regarding the appointment of apprenticeship classes.

First, the Trust Agreement authorizes the JATP Trustees "[t]o take any and every action which may be reasonably necessary to accomplish the purposes for which the Plan and Trust Fund are created, whether or not such action is expressly authorized [by the Trust Agreement]." *Id.* Art. V, ¶ 5.16. Second, the Trust Agreement directs the JATP Trustees to

> formulate and promulgate an Apprenticeship and Training Program and any and all rules and regulations which they deem necessary or desirable to facilitate the proper administration of such program and the accomplishment of its purposes, so long as such rules and regulations are not inconsistent with the provisions of this Agreement and are not contrary to law. Such rules and regulations shall set forth the terms, conditions and manner in which persons seeking to be trained as Apprentices and shall specify the terms and conditions under which such persons shall be trained and employed, and the standards which must be met by Apprentices. Such rules and regulations shall specifically provide that there shall be no discrimination between applicants for training based upon his or her race, sex, color, religion or national origin.

*Id.* Art. V, ¶ 5.18. Third, Article V of the Trust Agreement permits the Trustees "[t]o construe the provisions of [the Trust] Agree-

ment and any amendment to it, as well as the rules and regulations formulated by them and any amendments hereto," and Article V provides that "[t]he construction adopted by the Trustees acting in good faith shall be binding upon the Union, the Association, all Employers, all Employees and all persons accepted for training under the Plan." *Id.* Art. V, ¶ 5.19.

This Court finds that these expansively worded provisions of the Trust Agreement vest the JATP Trustees with broad power and discretion to operate the JATP as they see fit in furtherance of the program's purposes and goals. The Trust Agreement does not circumscribe the actions of the Trustees, but rather empowers the Trustees to take "any and every action," *id.* Art. V, ¶ 5.16, and to establish "any and all rules and regulations which they deem necessary or desirable" to the administration of the program. *Id.* Art. V, ¶ 5.18. It further grants the Trustees sole authority to interpret the JATP Trust Agreement, rules, and regulations. *Id.* Art. V, ¶ 5.19. Moreover, the Trust Agreement establishes only one condition by which the Trustees must abide in their selection of JATP apprentices, namely, ensuring that JATP rules and regulations comport with the law and "specifically provide that there shall be no discrimination" in the selection of apprentices. *Id.* Art V, ¶ 5.18.

By directing this Court's attention to the foregoing provisions of the Trust Agreement, Petitioners have satisfied the first prong of the Singleton test. *Barrett,* 276 F.2d at 431; *Singleton,* 336 F.Supp. at 757. The issue whether to appoint a new JATP apprenticeship class is an issue of trust administration because the Trust Agreement clearly places *all* matters pertaining to the JATP, including the selection of JATP apprentices, in the Trustees' hands. Accordingly, this Court finds that the selection of JATP apprentices is an issue which the Trust Agreement grants the JATP Trustees the authority to decide, and for which this Court can appoint an impartial umpire, pursuant to LMRA section 302(c). *See Mahoney,* 277 F.2d at 6; *Barrett,* 276 F.2d at 431; *Singleton,* 336 F.Supp. at 757.

Respondents' arguments to the contrary are wholly unavailing. Although Respondents' various claims may arise from actual controversies and may represent serious problems between the Association Trustees and the Union Trustees, or between the Association employers and the Union itself, these alleged problems are neither relevant to this Court's resolution of the instant petition nor are they even claims for which Respondents can seek relief from this Court. This Court will examine each of Respondents' claims in turn.

a. *Respondents' Claim that an Impartial Umpire Would be Powerless To Resolve the Parties' Dispute Because the Dispute Concerns the Parties' Collective Bargaining Agreement*

Respondents claim that the parties have a disagreement over an interpretation of the Collective Bargaining Agreement that must be submitted to contract arbitration. Respondents claim that the dispute in the instant case concerns the wage scale established by the CBA. They also contend that an impartial umpire appointed by this Court would be powerless to resolve a dispute between the Association employers and the Union regarding the proper application of wage scales established by the CBA.

Respondents, however, are incorrect. The resolution of this wage dispute, regardless of its merits, does not affect the instant petition. The dispute that is pending before this Court does not concern wages or the CBA. Petitioners requested an impartial umpire to break the deadlock between the Association Trustees and the Union Trustees over the "commencement of a new first year apprenticeship class." (Pets.Memo at 2); (Pets.Reply Memo at 4); *see* (Pet. at 4, 6–7); (Pets. Memo at 5, 6); (Pets.Reply Memo at 2, 5, 13.) As previously discussed, the commencement of a JATP apprenticeship class is an issue of trust administration under the JATP Trust Agreement. It neither concerns nor is affected by the CBA. The JATP Trust Agreement and the CBA are separate documents with distinct functions. The Trust Agreement creates the JATP program as well as the rights and duties of its Trustees

and participants, while the CBA memorializes the terms and conditions of employment agreed upon by the Association employers and the Union. Furthermore, the CBA is silent on all matters regarding the administration of the JATP and the conduct of its Trustees, and it specifically provides that the JATP and the JATP Trustees will "operate[ ] pursuant to the terms and conditions of the Trust Agreement." (CBA Art XXIX(a).)

Remarkably, Respondents actually concede this point. Respondents state that "[t]he CBA provisions relating to the hiring of employees makes no reference ... to the selection of persons as apprentices." (Resps.Memo at 3.) They thus admit that the CBA is not the document that controls the Trustees' appointment of JATP apprentices.

2. *Respondents' Claim that an Impartial Umpire Would be Powerless To Resolve the Instant Dispute Because it Concerns Federal and State Affirmative–Action Principles*

Respondents' second argument in opposition to the instant petition is equally unavailing. Respondents assert that the parties' dispute concerns affirmative-action issues that are beyond the power of a court-appointed trustee to resolve. *Id.* Allegations of discrimination deeply trouble this Court. As this Court noted in an opinion issued last summer,

> [a]ny allegation of race- or gender-based discrimination is a serious matter.... Invidious discrimination of any kind, in any form, and under any guise is evil. It is unconscionable; it is dehumanizing; it is degrading; it is destructive; it is divisive; it is virulent; it is intolerable; it is abhorrent; and it must not be ignored or condoned. Invidious discrimination is one of society's worst enemies because it undermines society's moral foundation. In essence, it is a crime against humanity. Every conceivable legitimate means should be used to root it out.

*United States v. International Brotherhood of Teamsters,* 896 F.Supp. 1349, 1369–70 (S.D.N.Y.1995). Although Respondents raise an issue that concerns this Court, two factors preclude this from addressing Respondents' affirmative-action claims.

First, and most importantly, even if all of Respondents' affirmative action claims are true, they are irrelevant to this Court's decision to appoint an impartial umpire pursuant to LMRA section 302(c). Case law holds that the prudence, appropriateness, or propriety of the position held by the party requesting a court-appointed impartial umpire pursuant to LMRA section 302(c) is an issue for the impartial umpire only, not the court. *Friedberg,* 568 F.Supp. at 1257; *In re Feldman,* 165 F.Supp. 190, 193 (S.D.N.Y. 1958). Moreover, even the possibility that an impartial umpire might make a decision that is not prudent, appropriate, or proper, is beyond the scope of a federal court's inquiry. *See Hawkins,* 704 F.2d at 1162. A court's sole inquiry when reviewing a petition made pursuant to LMRA section 302(c) is whether Petitioners have demonstrated each of the prerequisites for obtaining a court-appointed umpire outlined in *Singleton.* Once an umpire is appointed, "[t]his umpire must, of course, consider very carefully whether it is, in light of the agreement between the parties and the provisions of the trust instrument, appropriate and proper for the motion to be adopted or defeated." *Feldman,* 165 F.Supp. at 193. Thus, although this Court is concerned about Respondents' allegations of discrimination, these allegations can not influence this Court's decision whether to appoint an impartial trustee. Accordingly, it falls to the impartial umpire to determine whether the discrimination that Respondents allege warrants rejecting the apprenticeship class as proposed by Petitioners.

Second, any deficiencies the JATP may have regarding affirmative action or other issues of program administration only affect the JATP's eligibility for government approval and benefits, not its ability to operate. Federal law authorizes a dual federal and state system for regulating labor apprenticeship programs. *Joint Apprenticeship & Training Council v. New York Dept. of Labor,* 984 F.2d 589, 591 (2d Cir.1993). Both federal and New York State law provide standards to which apprenticeship programs should aspire, and each establishes eligibility

requirements and procedures for the registration and deregistration of apprenticeship programs with federal and state agencies. 29 U.S.C. § 50; 29 C.F.R. § 29.1; *JATC*, 984 F.2d at 589. Neither federal nor New York State law, however, requires that an apprenticeship program register in order to operate. *Id.* In fact, although compliance and registration do qualify programs for privileges such as financial assistance, *JATC*, 984 F.2d at 589; *Hydrostorage*, 891 F.2d at 731; *Local 363*, 829 F.Supp. at 103, compliance with federal and state standards and registration requirements is voluntary. N.Y.Lab.Law § 816–a; *JATC*, 984 F.2d at 589; *Local 363*, 829 F.Supp. at 103.

Because compliance with federal and state apprenticeship regulations—including those pertaining to affirmative action—is voluntary, noncompliance does not affect the JATP's ability to operate. Thus, even if Respondents' allegations are true and the JATP as currently organized violates state and federal apprenticeship regulations pertaining to affirmative action, the JATP still can function and its Trustees still can commence a new apprenticeship class. An impartial umpire appointed by this Court to break the Trustees' pending deadlock would possess the power to resolve the dispute underlying the deadlock by voting on the issue of whether to commence a new apprenticeship class. Accordingly, Respondents' argument is devoid of merit.

### 3. Respondents' Remaining Arguments in Opposition to the Instant Petition

Respondents' final two arguments in opposition to the instant Petition are little more than specious, unsubstantiated allegations that are irrelevant to this Court's task of appointing an impartial umpire. Respondents challenge Petitioners' claims of injury arising from the Association Trustees' and the Union Trustees' dispute by accusing Petitioners of wrongdoing that justifies Respondents' refusal to cooperate. Respondents allege that the Association employers are not funding the JATP according to the CBA and the Trust Agreement, and Respondents charge the Association Trustees with dis-

crimination in their selection of JATP apprentices. (Resps.Memo at 7.) Respondents further contend that the potential liability for breach of fiduciary obligations that Petitioners fear "is a figment of the Petitioners' imagination" and that Petitioners "have absolved themselves of liability by bringing this procedure . . . ." *Id.*

These claims, like all others Respondents' have brought before this Court, are irrelevant to this Court's task of appointing an impartial umpire pursuant to LMRA section 302(c). These claims focus on issues outside the scope of the *Singleton* test and the Second Circuit's approach to determining whether a dispute among trustees of an employee welfare fund concerns an issue of trust administration. Moreover, Respondents' claims are merely conclusory allegations unsupported by any facts, law, or legal arguments. Accordingly, this Court finds that Respondents' arguments are meritless.

### 2. Absence of an Agreed Upon Neutral Person

Having found that the issue underlying the instant petition is one of trust administration for which this Court can appoint an impartial umpire, this Court must analyze the second prong of the *Singleton* test: whether "no agreed neutral person is available to break the impasse . . . ." 336 F.Supp. at 757. This Court finds that Petitioners satisfy this prong.

In their Petition, the Association Trustees state that "there is no agreed upon neutral person available to break the deadlock." (Pet. at 5.) They support this claim by submitting to this Court a copy of Petitioners' letter to Respondents in which Petitioners "request that an impartial trustee be appointed immediately" to break the deadlock. (Citrin Letter at 2.) Respondents do not contest any of these facts in the papers they submitted to this Court. In fact, Respondents, in their motion for summary judgment, concede that there is no agreed upon neutral person to break the deadlock by stating that if this Court denies Respondents' motion and rules in favor of Petitioners, the "Court itself should appoint an impartial trustee." (Reps.Memo at 8.) Accordingly,

this Court holds that there is no neutral person available to break the parties' impasse in this case.

### 3. Failure to Agree on an Impartial Umpire

Finally, this Court finds that Petitioners also have met the third prong of *Singleton:* demonstrating that "the parties fail to agree on an impartial umpire." *Id.* Petitioners assert in their Petition that "[t]he Union Trustees have failed to cooperate and refuse to cooperate with the Association Trustees to appoint a neutral to break the ... deadlock between the parties." (Pet. at 5.) Respondents' papers in support of their motion for summary judgement do not challenge Petitioners' claim. (Resps.Memo at 8.) Accordingly, this Court holds that the parties have failed to agree on an impartial umpire.

### C. Summary Judgment

The foregoing discussion demonstrates that respondents have failed to challenge the instant petition effectively. Nevertheless, because Respondents styled their challenge to the instant petition as a motion for summary judgment, pursuant to Rule 56, this Court must analyze Respondents' claims accordingly.

Pursuant to Rule 56, summary judgement is appropriate where "the pleadings, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Scottish Air Int'l, Inc. v. British Caledonian Group, Plc.,* 867 F.Supp. 262, 265 (S.D.N.Y.1994), and the party may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As the Second Circuit has noted, "all

ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988); *see also Celotex,* 477 U.S. at 330 n. 2, 106 S.Ct. at 2556 n. 2.

To defeat a motion for summary judgement, the nonmoving party must do "more than simply show that there is some metaphysical doubt as to material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Resolution Trust Corp. v. Hidden Ponds Phase IV Dev. Assocs.,* 873 F.Supp. 799, 804 (E.D.N.Y.1995). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Scottish Air,* 867 F.Supp. at 266. If the adverse party does not respond to the motion for summary judgement, "summary judgement, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). Such an entry of summary judgment is inappropriate, however, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, ... even if no opposing evidentiary matter is presented." Fed.R.Civ.P. 56(e) advisory committee's notes (1963 amendment).

The existence of a genuine issue of material fact depends on both the genuineness and the materiality of the issues raised by the motion. *See Scottish Air,* 867 F.Supp. at 266. To evaluate a fact's materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted); *see Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). To evaluate the genu-

ineness of a material fact, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a judge or jury to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

In light of these standards and the foregoing discussion, this Court must deny Respondents' motion for summary judgment. As repeatedly stated above, each of Respondents' claims and arguments is irrelevant to this Court's task of appointing an impartial umpire pursuant to LMRA section 302(c) according to the substantive law of the LMRA. Thus, Respondents not only have failed to demonstrate that they are entitled to judgment as a matter of law, but they also have failed to provide this Court with any facts that are material to resolving the instant petition. Consequently, Respondents' motion for summary judgment motion must be denied.

### D. Further Procedures

Because Petitioners "satisfy this Court that (a) a genuine deadlock exists on an issue of administration, (b) no agreed neutral person is available to break the impasse, [and] (c) the parties fail to agree on an impartial umpire," *Singleton*, 336 F.Supp. at 757, this Court will appoint an impartial umpire pursuant to section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), to vote on the issue of whether to commence a new JATP apprenticeship class. To facilitate this Court's appointment of an impartial umpire, within thirty (30) days of the filing of this Opinion and Order, Association Trustees and Union Trustees each shall submit to this Court in writing the names of ten (10) persons proposed as umpire, indicating by number their priorities of choice. Each person on each list must be eligible to serve as a trustee according to the criteria and the restrictions set forth in Article VII, paragraph

7.2 of the Trust Agreement and Article VIII of the Trust Agreement. Although this Court will examine the parties' respective submissions, this Court retains complete authority and discretion to appoint an umpire, and this Court is in no way bound to select an impartial umpire from these submissions. This Court has permitted the parties to submit lists of names merely as a courtesy to the parties and as a means to resolve this dispute quickly. Ultimately, however, the selection of an appropriate impartial umpire is a matter solely left to this Court's discretion. The JATP Trustees shall apply the JATP Trust Fund to pay for the reasonable costs and expenses of retaining the impartial umpire in accordance with Article III, paragraph 3.3 of the Trust Agreement.

### E. Attorneys' Fees

In their Petition, Association Trustees request that this Court award them attorneys' fees, costs, and disbursements, and they further request that JATP funds be used for this reimbursement. (Pet. at 7.) Although section 302 of the LMRA does not authorize a court to award attorneys' fees in an action based solely on its authority, *Fase v. Seafarers Welfare and Pension Plan*, 79 F.R.D. 363, 366 (S.D.N.Y.1978), section 502(g) of ERISA does. 29 U.S.C. § 1132(g). As discussed earlier, Petitioners properly invoked this Court's jurisdiction under ERISA section 502 because: the JATP is an employee benefit plan within the meaning of ERISA; Petitioners are fiduciaries with the right to bring suit under ERISA section 502(a)(3); and Petitioners petitioned this Court for equitable relief to enforce a specific provision of the JATP employee benefit plan. Accordingly, Petitioners are eligible to request attorneys' fees from this Court.[3] *See id.*

Section 502(g) in relevant part provides that "[i]n any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorney's fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). In

---

**3.** Petitioners also seek attorneys' fees on the ground that Respondents violated Respondents' fiduciary duties under ERISA. Petitioners, however, failed to provide this Court with either factual submissions or legal citations that might

support their fiduciary-duty argument. Consequently, Petitioners are not entitled to an award of attorneys' fees based on the argument that Respondents violated their fiduciary duties under ERISA.

the Second Circuit, a court must weigh five factors when considering an application for attorneys' fees: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award for attorneys' fees; (3) whether an award of attorneys' fees would deter others from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the parties requesting attorneys' fees sought to confer a common benefit on an ERISA plan's participants and beneficiaries. *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987); *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Although the awarding of attorneys' fees "is discretionary, not mandatory," *Fase v. Seafarers Welfare and Pension Plan,* 589 F.2d 112, 116 (2d Cir.1978); *see International Brotherhood of Teamsters, Joint Council 18 v. New York State Teamsters Council Health and Hospital Fund,* 903 F.2d 919, 923 (2d Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 251, 112 L.Ed.2d 210 (1990), "a district court should make specific findings regarding the matter." *Joint Council 18,* 903 F.2d at 924.

This Court lacks sufficient factual information to make a specific finding on each of the five elements that this Court must consider in order to resolve the issue of attorneys' fees in the instant case. Consequently, this Court will defer consideration of Petitioners' request for attorneys' fees pending the submission by Petitioners and by Respondents of supplemental memoranda of law addressing each of the five elements listed above. The Petitioners shall include a statement regarding the amount of attorneys' fees that they are seeking in this action and the Respondents shall include information concerning their ability to satisfy an award of attorneys' fees. Each party also must address Petitioners' request that attorneys' fees be paid from the JATP Trust fund.

### CONCLUSION

IT IS HEREBY ORDERED that Respondents' motion for summary judgment pursuant to Rule 56 is DENIED.

IT IS FURTHER ORDERED that Petitioners' petition is GRANTED.

IT IS FURTHER ORDERED that within 30 days of the filing of this Opinion and Order Petitioners and Respondents each submit a list of ten persons proposed as umpire, indicating by number their priorities of choice.

IT IS FURTHER ORDERED that Petitioners and Respondents each propose as umpire only those persons eligible to serve as a JATP Trustee according to the criteria and restrictions set forth in Article VII, paragraph 7.2 of the Trust Agreement and Article VIII of the Trust Agreement.

IT IS FURTHER ORDERED that the JATP Trustees pay for the reasonable costs and expenses of the impartial trustee chosen by this Court in accordance with Article III, paragraph 3.3 of the Trust Agreement.

IT IS FURTHER ORDERED that within 10 days of the filing of this Opinion and Order Petitioners and Respondents each submit supplemental memoranda of law regarding the issue of attorneys' fees.

SO ORDERED.