James **TUCCI**, Plaintiff,

v.

**EDGEWOOD COUNTRY CLUB, Defined Benefit Retirement Income Plan for Employees of Edgewood Country Club, an Employee Benefit Plan and Bankers Life Company, Defendants.**

Civ. A. No. 77–341.

United States District Court,
W. D. Pennsylvania.

Nov. 6, 1978.

---

Gregg P. Otto, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for plaintiff.

J. Robert Maxwell, Maxwell & Huss, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

### FACTS

James Tucci was hired on June 28, 1966 as Chief Chef of defendant Edgewood Country Club. Defendant Edgewood contends that about 1970 his performance began to deteriorate as supervisor of the food acquisition and preparation department. With complaints allegedly accumulating, plaintiff Tucci was told on February 17, 1976 that he would have to either leave or step down to a cook's position.[1] Being unwilling to step down to a cook's job, plaintiff's employment was terminated on February 17, 1976.

Meanwhile, during late 1975 and early 1976, Edgewood directors had been negotiating with Bankers Life Company for an insurance funded pension program for its employees, to replace the old program which had existed since April, 1958. This negotiation was a result of the newly enacted requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 *et seq.* The Edgewood Board of Directors adopted the new Bankers Life Plan on February 28, 1976; it was agreed to by Bankers Life on March 28, 1976; and it was formally executed on March 30, 1976. Under the old retirement plan 20 years of employment were required to qualify for a pension. Under the new Bankers Life Plan, which was explicitly made retroactively effective as of June 1, 1975, complete vesting of pension benefits occurred upon 10 years of credited employment. Both plans provided no vested benefits for employment less than the required 10 or 20 years.

After plaintiff's complaint to this Court, a motion to dismiss was filed by defendants and a motion for summary judgment was filed by plaintiff. Submission of affidavits relative to defendants' motion to dismiss results in both matters being before the Court as motions for summary judgment. Federal Rule of Civil Procedure 12(b). The only issue to be decided is whether or not plaintiff is entitled to a pension under the new Bankers Life Retirement Plan of Edgewood Country Club.

### PLAN PARTICIPATION

Defendants first contend that plaintiff is not entitled to a pension because he was never a participant under the 1976 pension plan. Defendants' position is that an employee whose employment is terminated when a retirement plan is not yet adopted cannot reasonably be called a plan participant merely because a plan later adopted is made retroactive to a date prior to his termination. Defendants therefore conclude that since plaintiffs' employment ceased as of February 17, 1976 and the Bankers Life Plan was adopted sometime shortly thereafter, plaintiff is relegated to any benefits obtainable under the 1958 pension provisions. The 1958 pension plan entitled plaintiff to no benefits because he had not worked for 20 years. Defendants would then not be required to pay plaintiff any pension.

---

1. With plaintiff's job performance deteriorating as far back as 1970, it is somewhat curious that not until 6 years later was he asked to step down to a cook's position or leave. Defendant Edgewood's actions are particularly suspect when viewed in conjunction with the expected liberalization of pension vesting under the 1976 Retirement Plan. Plaintiff was in a position to benefit from such a liberalization which, *inter alia,* reduced the period of employment necessary for vesting from 20 years to 10 years.

Defendants' viewpoint is untenable because of the explicit language of the 1976 retirement plan. The plan introduction, as specifically authorized by the Board of Directors of Edgewood Country Club, states at page 3:

"It is intended that the existing plan, as changed, will comply with the requirements of the Employee Retirement Income Security Act of 1974 and any subsequent amendments to the Act. It is believed that the best means to accomplish such changes is to amend said plan to completely restate the terms, provisions and conditions of said plan, which restatement, effective June 1, 1975 is substituted in lieu of said plan.

All persons covered under the existing plan on May 31, 1975 will be covered under the restated plan . . ."

Plaintiff was indisputably a person covered by the 1958 plan on May 31, 1975 because his employment did not cease until February 17, 1976. Therefore, pursuant to the express language ratified by the Edgewood Board of Directors, plaintiff is a participant under the 1976 retirement plan.

*VESTING*

Having determined that plaintiff is a participant in the 1976 pension plan, the only other issue requiring resolution is whether or not plaintiff had accumulated the 10 years of service necessary for vesting under the new plan. Defendants contend that plaintiff has 9 years, 11 months of credited service and thereby fails to qualify for a pension by one month.

The 1958 retirement plan gave no definition whatsoever as to what constituted a year of employable service. ERISA, however, requires that a year of service be credited whenever an employee works 1000 hours in a given yearly period. 29 U.S.C.A. § 1052(a)(3)(A). There is no dispute that plaintiff should be credited with one year of service for his employment from June 1, 1975, the effective date of the 1976 plan, to February 17, 1976. Both parties agree that he had worked the required 1000 hours that year. Disagreement surfaces as to the proper crediting of plaintiff's employment from June 28, 1966, the date of his hiring to June 1, 1975, the effective date of the 1976 plan.

The primary reference for determining the amount of service to be credited to plaintiff for June 28, 1966 through June 1, 1975 is the 1958 retirement plan. Under the 1958 plan the commencement of plaintiff's participation was June 28, 1966, the date of his hiring. See 29 C.F.R. § 2530.-204-2(b). The 1958 plan is silent, however, on the method of computing credited employment service. In the absence of any plan directive, the policies of ERISA should also be applied to the 1958 plan.[2] Therefore, beginning on June 28, 1966 through June 28, 1967 and each such year thereafter up until June 1, 1975, one year service must be credited to plaintiff for each year in which 1000 hours were worked. Having worked 1000 hours in each year from June 28, 1966 through June 28, 1974, plaintiff is credited with 8 years. Remaining to be considered is the time period from June 28, 1974 through June 1, 1975.

The problem created by the June 1, 1975 effective date of the 1976 plan is that there is an overlapping between years of service as calculated under the 1958 plan and years of service as determined under the 1976 plan. Since plaintiff became a participant under the 1958 plan on June 28, 1966, yearly periods ran from June 28 to June 28 of the succeeding year. However, the June 1, 1975 effective date cut short the potential 9th year of service under the 1958 plan. Plaintiff is entitled to be credited with that 9th year. Even though the 9th year was cut short by approximately one month, plaintiff had worked over 1000 hours in the 11 month period and was thus entitled to a

---

2. Retirement plans adopted prior to ERISA need not assume all of the requirements of such subsequent legislation. If the 1958 plan specifically detailed the manner of calculating credited service, the Court would follow the intended method to the exclusion of ERISA's 1000 hour requirement. However, where a plan in effect prior to the passage of ERISA is silent as to such a determination, the analogous application of ERISA fosters the desired objective of uniform national treatment.

year of credit. By changing the beginning date for computation of service from June 28 to June 1, defendant obligated itself to credit plaintiff with 2 years service for the overlapping period from June 28, 1974 to February 17, 1976. The Labor Regulations provide an illustration of this concept:

"A plan may be amended to change the vesting computation period to a different 12-consecutive month period provided that as a result of such change no employee's vested percentage of the accrued benefit derived from employer contributions is less on any date after such change than such vested percentage would be in the absence of such change. A plan amendment changing the vesting computation period shall be deemed to comply with the requirements of this subparagraph if the first vesting computation period established under such amendment begins before the last day of the preceding vesting computation period and an employee who is credited with 1,000 hours of service in both the vesting computation period under the plan before the amendment and the first vesting computation period under the plan as amended is credited with 2 years of service for those vesting computation periods. For example, a plan which has been using a calendar year vesting computation period is amended to provide for a July 1–June 30 vesting computation period starting in 1977. Employees who complete more than 1000 hours of service in both of the 12 month periods extending from January 1, 1977 to December 30, 1977 and from July 1, 1977 to June 30, 1978 are advanced two years on the plan's vesting schedule." 29 C.F.R. § 2530.203–2(c)(1).

Plaintiff is therefore credited with 8 years of service for June 28, 1966 through June 28, 1974 and 2 years of service for June 28, 1974 through February 17, 1976. Having accumulated 10 years of credited service, plaintiff is entitled to a pension under the 1976 plan.

*CONCLUSION*

In summary, plaintiff is a participant of the 1976 Retirement plan notwithstanding the fact that the plan was adopted after plaintiff's employment ceased, because the 1976 plan was explicitly made retroactive to a date during plaintiff's employment. Being a participant of the 1976 plan, plaintiff is required to have accumulated 10 years of credited employment to qualify for a pension. Utilizing the 1000 hour per year work requirement of ERISA and the proper crediting of overlapping computation periods, plaintiff has amassed the requisite 10 years needed to qualify for a pension under the 1976 plan. Accordingly, plaintiff's motion for summary judgment will be granted and defendant's motion to dismiss, treated as a motion for summary judgment, will be denied. If the parties cannot reach agreement on the amount of plaintiff's pension within 30 days, a master will be appointed to set the amount.