Robert H. **GENNAMORE**, Plaintiff,

v.

**BUFFALO SHEET METALS, INC., Pension Plan and Trust and Buffalo Sheet Metals, Inc., Defendants.**

No. CIV–82–364C.

United States District Court, W.D. New York.

July 14, 1983.

---

Diebold, Bermingham, Gorman, Brown & Bridge, Buffalo, N.Y. (Joseph D. Bermingham, Jr., Buffalo, N.Y., of counsel), for plaintiff.

Smolka & Sillars, Clarence, N.Y. (Robert G. Sillars, Clarence, N.Y., of counsel), for defendants.

CURTIN, Chief Judge.

Plaintiff Robert Gennamore commenced this action pursuant to the Employment Retirement Income Security Act [ERISA], 29 U.S.C. § 1001 *et seq.,* seeking to obtain pension benefits. He was a full-time employee at Buffalo Sheet Metals, Inc., from July 31, 1967, until May 31, 1977.

When plaintiff began work in 1967, his company provided a retirement plan called the Buffalo Sheet Metals Pension Trust. This plan had been in effect since 1966, and plaintiff became a participant in that plan. The plan provided that an employee's share in the retirement fund would vest upon the conditions that an individual be an employee for ten years and be a plan participant for at least five years.

On June 1, 1976, an amended plan, the Buffalo Sheet Metals Plan and Trust, was created in compliance with ERISA. Plaintiff became a participant in this plan on that date. The amended plan provides that a participant is eligible for early retirement

benefits if he or she has been a company employee for ten years and has reached the age of 55.

Plaintiff has moved for summary judgment, and defendants have cross moved for summary judgment. The sole issue to be decided is whether plaintiff has accrued ten years of credited service and therefore is entitled to a pension.

■ Judicial review in this case is limited to determining if, by denying plaintiff a pension benefit, the trustees of the pension plan have acted in an arbitrary or capricious manner. *Haeberle v. Board of Trustees of Buffalo Carpenters,* 624 F.2d 1132, 1136 n. 6 (2d Cir.1980); *Valle v. Joint Plumbing Industry Board,* 623 F.2d 196, 203 (2d Cir.1980).

■ Plaintiff contends that he has earned ten years of employment credit under the original pension plan and the revised 1976 plan. In particular, he alleges that the policies of ERISA should be applied to both the original retirement and the new plan, *see Tucci v. Edgewood Country Club,* 459 F.Supp. 940 (W.D.Pa.1978). Under the *Tucci* court's analysis of ERISA, plaintiff would be credited a year of participation in the plan for each year in which 1,000 hours were worked, 29 U.S.C. § 1052(a)(3)(A). The calendar for tolling those periods would begin on July 31, 1967, the date of hiring and the first date credited for participation in the plan, 29 C.F.R. § 2530.204–2(b). Plaintiff further asserts that he has worked at least 1,000 hours from July 31, 1975, through May 31, 1976, his last work period under the original plan, and therefore is entitled to one year's credited service (*see* 29 C.F.R. § 2530.203–2(C)(1)). Finally, plaintiff asserts that under the new plan, he worked 1,000 hours between June 1, 1976, and May 31, 1977, and therefore, under the ERISA computation formula, is entitled to one year of credit, 29 U.S.C. § 1052(a)(3)(A). As a result, plaintiff's argument can be summarized as follows:

| Dates | Credited Service |
|---|---|
| July 31, 1967 – July 30, 1968 (1000 hours) | 1 year |
| July 31, 1968 – July 30, 1969 (1000 hours) | 1 year |
| July 31, 1969 – July 30, 1970 (1000 hours) | 1 year |
| July 31, 1970 – July 30, 1971 (1000 hours) | 1 year |
| July 31, 1971 – July 30, 1972 (1000 hours) | 1 year |
| July 31, 1972 – July 30, 1973 (1000 hours) | 1 year |
| July 31, 1973 – July 30, 1974 (1000 hours) | 1 year |
| July 31, 1974 – July 30, 1975 (1000 hours) | 1 year |
| Subtotal | 8 years |
| July 31, 1975 – May 31, 1976 (1000 hours) (Last year of original plan) | 1 year |
| June 1, 1976 – May 31, 1977 (1000 hours) (First year of amended plan) | 1 year |
| TOTAL | 10 years |

Defendants, however, contend that plaintiff has not accrued the requisite ten years of employment credit. In particular, they allege that under the original 1966 plan, an employee was credited with employment service for each full fiscal year that an individual worked under the plan. Defendants further maintain that the fiscal year began on June 1 of each year. Therefore, during plaintiff's first fiscal year of employment (July 31, 1967—May 31, 1968), he accumulated only ten months of credited service.

Next, defendants assert that plaintiff earned eight fiscal years of credit for June 1, 1968 through May 31, 1976, the expiration date of the original plan, and that plaintiff was credited one additional fiscal year for June 1, 1976, through May 31, 1977, the first year of the amended retirement plan.

In sum, in applying the fiscal year criteria, defendants contend that plaintiff accumulated only nine years and ten months of employment credit. The following chart illustrates this theory of computation:

| Dates | Credited Service |
|---|---|
| July 31, 1967 – May 31, 1968 | 10 months |
| June 1, 1968 – May 31, 1976 (Expiration date of original plan) | 8 years |
| June 1, 1976 – May 31, 1977 (First year of amended plan 1000 hours worked) | 1 year |
| TOTAL | 9 years, 10 months |

In support of its contention that years of service should be measured from the fiscal year of June 1, defendants refer to section 3.01 of the original pension plan. That section reads in part:

Every employee ... who is in the employ of the Employer on the effective date of this Trust or any Anniversary Date thereof, shall be eligible to participate in the Plan on the Anniversary Date coinciding with or next following his completion of three (3) years of continuous employment. . . .

Additional related sections relied upon by defendants include section 1.02, which provides in part that "June 1, 1957 shall be the effective date of this Trust. . . ." Section 2.09 provides that the " 'Anniversary Date' shall mean the effective date set forth in Section 1.02 [June 1, 1957] and each anniversary thereof." Finally, section 4.05 provides in part that "[e]ach Policy shall have an issue date the same as an Aniversary [sic] Date [i.e., June 1]. . . ."

Upon review of these provisions, it is clear that none of these sections refers to the method of computing credited employment service. Section 4.05 deals solely with the issue date of an employee's policy. Section 3.01 pertains only to an employee's eligibility to participate in the plan.

Both parties agree that plaintiff is credited with service from the first day of employment (Docket Items 8, 9, 10, 13). June 1, the anniversary date, therefore, is cited in the plan for the purpose of determining when an employee may officially join the plan. This cite does not provide, however, the date when an employee's period of credited service begins to accumulate.

As additional support of their contention, defendants rely upon an affidavit by Lawson Finger, a trustee of the retirement plan, who states in part that:

Under the 1966 plan the employees were credited with years of service for each full fiscal year that the employee worked under the plan. The fiscal year for the plan commenced on June 1 of each year.

Thus, during the first fiscal year of the plaintiff's employment, that is the date of his employment on July 31, 1967, until the end of the pension plan fiscal year on June 1, 1968, the plaintiff had accumulated only 10 months of credited service. . . .

(Affidavit of Lawson L. Finger, Docket Item 10).

An affidavit by LeRoy T. Watkins, attorney for the Pension Plan since 1965, reiterates this contention that the old plan was computed on the basis of years and months of credited service (Docket Item 11). In brief, both of these affidavits simply confirm defendants' fiscal year computation analysis.

Nonetheless, neither of these affidavits is supported by any document, pleading, or contract provision. Moreover, there is a contradiction between the assertions in the affidavit and section 6.02 of the original retirement plan itself. Section 6.02 fixes the vesting period at ten years of service, without any reference to a fiscal year or any other method of computation. Under defendants' computation theory, however, plaintiff actually would need more than ten calendar years of employment for his pension to vest. The following chart illustrates their computation:

| | |
|---|---|
| July 31, 1967 – May 31, 1968 | 10 months |
| June 1, 1968 – May 31, 1976 (Expiration date of old plan) | 8 years |
| June 1, 1976 – May 31, 1977 (First year on new ERISA plan 1000 hours worked) | 1 year |
| TOTAL | 9 years, 10 months |
| June 1, 1977 – July 31, 1977 (Extra time needed for vesting 10th anniversary of employment) | 2 months |
| | 10 years |

This analysis is impossible under the mandates of ERISA. Under ERISA, there is no provision allowing credit for parts of years (e.g., two months). An employee either works 1,000 hours within a 12-month period and receives credit for a year, or else he works less than 1,000 hours and receives no credit. Thus, under defendants' analysis, in order to qualify for his pension within ten years (here July 31, 1977), plaintiff would have had to work 1,000 hours between June 1, 1977, and July 31, 1977. A normal work period, however, is less than 350 hours (see Docket Item 13, p. 5). Consequently, under defendants' computations, plaintiff could not have possibly vested within 10 years, as mandated by section 6.02.

Looking at the record as a whole, the original retirement plan fails to provide a formula for computing credited employment service.

The court in *Tucci v. Edgewood Country Club, supra,* held that where the original pension plan is silent on the method of any plan directive, the policies of ERISA should be applied. In *Tucci,* the district court granted plaintiff's motion for summary judgment, finding that an employee who had worked nine years and eleven months had accumulated ten years of requisite credited service. *Tucci,* like the instant case, involved a retirement plan which was amended to comply with the mandates of ERISA. Moreover, *Tucci,* as here, involved an original plan which gave no definition whatsoever as to what constituted a year of credited service.

Upon applying ERISA to the original retirement plan, the *Tucci* court referred to 29 U.S.C. § 1052(a)(3)(A). This section provides that one year of service will be credited whenever an employee works 1,000 hours in a given yearly period. Next, in determining when plaintiff's credit for services began, the court referred to 29 C.F.R. § 2530.204–2(b). This section provides that from the date of participation in the plan, all service shall be taken into account in determining an employee's total period of service.

In the instant case, there is no disagreement that plaintiff should be credited with one year of service for his employment from June 1, 1976 (the effective date of the amended plan) through May 31, 1977. Both parties agree that plaintiff worked the required 1,000 hours that year (*see* Docket Items 8, p. 2, and 10, p. 2). The conflict concerns the accurate crediting of plaintiff's employment from July 31, 1967, the date of his hiring, to June 1, 1976, the date of the start of the amended plan.

Because there is a lack of plan directive in the original retirement plan, the policies of ERISA need to be applied, *Tucci, supra.* Specifically, the *Tucci* court reasoned that:

Retirement plans adopted prior to ERISA need not assume all of the require-

ments of such subsequent legislation. If the 1958 plan specifically detailed the manner of calculating credited service, the Court would follow the intended method to the exclusion of ERISA's 1000 hour requirement. However, where a plan in effect prior to the passage of ERISA is silent as to such a determination, the analogous application of ERISA fosters the desired objective of uniform national treatment.

*Tucci v. Edgewood Country Club, supra* at 942 n. 2.

■ Since plaintiff's participation in the plan commenced on his first day of employment (he was credited with service from that date), all service from that date (July 31, 1967) is to be taken into account under ERISA, 29 C.F.R. § 2530.204–2(b). Consequently, beginning on July 31, 1967, and up until July 30, 1975, plaintiff earned one year of credit for each year in which he had worked at least 1,000 hours, as mandated by ERISA. 29 U.S.C. § 1052(a)(3)(A). This computation adds up to eight years of credited service during this time period. The chart below illustrates this analysis:

| | |
|---|---|
| July 31, 1967 – July 30 1975 | 8 years |
| (1000 hours worked in each 12-month period) | |
| June 1, 1976 – May 31, 1977 | 1 year |
| (1000 hours worked in last old plan period) | |

The remaining computation is the time period from July 31, 1976, through May 31, 1976, the last period of the original retirement plan. Plaintiff's yearly periods under the original plan ran from July 31 to July 30 of the succeeding year. However, the commencement date of the new plan, June 1, 1976, shortened plaintiff's ninth year of service by two months.

Again, the *Tucci* court and ERISA provide guidance for this computation. The court refers to 29 C.F.R. § 2530.203–2(c)(1), which provides in part that:

A plan amendment changing the vesting computation period shall be deemed to comply with the requirements of this subparagraph if the first vesting computation period established under such amendment begins before the last day of the preceding vesting computation period

and an employee who is credited with 1,000 hours of service in both the vesting computation period under the plan before the amendment and the first vesting computation period under the plan as amended is credited with 2 years of service of those vesting computation periods.

In the instant case, even though plaintiff's ninth year of service comprised only 10 months, he had worked over 1,000 hours during that period. Consequently, he earned one year of credited service, *see* 29 C.F.R. § 2530.203–2(c)(1).

Summarizing this analysis, plaintiff earned credit for eight years of service for July 31, 1967, through July 30, 1975. Additionally, he earned one year of credit for July 31, 1975, through May 31, 1976, the last period of the old plan. Finally, as asserted by both parties, plaintiff earned one year of credit for June 1, 1976, through May 31, 1977. The following chart illustrates this analysis:

| Dates | Credited Service |
| --- | --- |
| July 31, 1967 – July 30, 1968 (1000 hours) | 1 year |
| July 31, 1968 – July 30, 1969 (1000 hours) | 1 year |
| July 31, 1969 – July 30, 1970 (1000 hours) | 1 year |
| July 31, 1970 – July 30, 1971 (1000 hours) | 1 year |
| July 31, 1971 – July 30, 1972 (1000 hours) | 1 year |
| July 31, 1972 – July 30, 1973 (1000 hours) | 1 year |
| July 31, 1973 – July 30, 1974 (1000 hours) | 1 year |
| July 31, 1974 – July 30, 1975 (1000 hours) | 1 year |
| July 31, 1975 – May 31, 1976 (1000 hours) (Last Period of old plan) | 1 year |
| July 31, 1976 – May 30, 1977 (1000 hours) | 1 year |
| TOTAL | 10 years |

Consequently, plaintiff has accrued the requisite ten years needed to vest his pension benefit under both the original and the amended plans. Accordingly, plaintiff's motion for summary judgment is granted, and defendants' cross motion for summary judgment is denied.

■ Plaintiff also has requested attorney's fees and costs as part of his relief. Section 1132(g) of ERISA authorizes a court in its discretion to award reasonable attorney's fees and costs for either party "in any action under subchapter I." 29 U.S.C. §§ 1001–1144. The authorization was intended to enable the pension claimants to obtain competent counsel and to distribute the economic burden of litigation in a fair manner. *Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180, 182 (W.D.N.Y.1980), *aff'd* 642 F.2d 664 (2d Cir.1981).

In considering an award of attorney's fees, the factors to be considered include:

1) The degree of the offending party's culpability and bad faith;

2) The ability of the offending party to satisfy an award of attorney's fees;

3) Whether an award of attorney's fees would deter other persons from acting similarly under like circumstances;

4) The relative merits of the parties' positions; and

5) Whether the action benefited a general class of beneficiaries of the fund.

*Ford v. New York Central Teamsters Pension Fund, supra* at 183.

### *Culpability and Bad Faith*

■ Under ERISA, a plaintiff need not show bad faith in order to recover attorney's fees, *Ford v. New York Central Teamsters Pension Fund, supra* at 182 n. 3, and in this case, plaintiff has demonstrated that defendants acted in an arbitrary and capricious manner in computing and applying the pension plan's vesting requirements. Under the defendants' analysis, plaintiff's pension could not reasonably have vested within 10 years of employment, as provided in section 6.02 of the original retirement plan. Defendants thus forced plaintiff into what can only be viewed as unnecessary litigation and the expenditure of funds for private counsel.

### *Ability of Parties to Satisfy an Award*

■ The defendant Pension Plan and Trust appears fully able to satisfy such an award, while the plaintiff appears to have relatively limited financial means. In *Morales v. Plaxall*, 541 F.Supp. 1387, 1392 (E.D.N.Y.1982), the court found that where the plaintiff has limited financial resources, a favorable judgment constitutes an empty

victory, absent an award for attorney's fees.

## Relative Merits

Defendants possessed no legitimate reasons for denying plaintiff prompt payment of his vested benefits. Defendants' arguments in denying plaintiff his pension were not supported by any contract or pension trust provision but solely by affidavits. Plaintiff's reference to section 6.02 of the original plan and to ERISA statutes and regulations adequately refute the substance of the defendant's assertions.

## Deterrence

An award of attorney's fees against the defendant will promote deterrence against any future arbitrary and capricious action by the pension trustees. Defendants

> will have added incentive to comply with ERISA, rather than [face] suits for compliance, if they know that they may have to pay plaintiff's attorneys' fees, in addition to the cost of compliance and their own legal fees.

*Marquardt v. North American Can Corporation,* 652 F.2d 715, 721 (7th Cir.1981).

## Common Benefit

Plaintiff's lawsuit provided a "common benefit" for participants in the fund. In bringing this action, plaintiff challenged the actions of the trustees and brought forward a significant legal question for court review. The resolution of this matter will affect not only the plaintiff but also other Buffalo Sheet Metal Pension Plan participants who were hired prior to ERISA and during the time the original plan was in effect.

Accordingly, for the foregoing reasons, the court directs that defendants pay plaintiff's reasonable attorney's fees and costs in this action. Plaintiff is directed to submit an affidavit of costs within 30 days of this date.

So ordered.