**Yale CITRIN, in his capacity as an Association Trustee for the Joint Apprentice and Training Program of the Elevator Industry, and on behalf of all of the Association Trustees, Petitioners,**

v.

**Christopher ERIKSON and James O'Hara, as Union Trustees of the Joint Apprentice and Training Program of the Elevator Industry, Respondents.**

**No. 95 Civ. 9004 (DNE).**

United States District Court, S.D. New York.

March 14, 1996.

Michael J. DiMattia, Ross & Hardies, New York City, for Yale Citrin.

## OPINION & ORDER

EDELSTEIN, District Judge:

The instant action arose under the provisions of section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and section 302(c) of the Labor Management Relations Act ("LMRA"),

29 U.S.C. § 186(c). Yale Citrin and the Association Trustees of the Joint Apprenticeship and Training Program ("JATP") of the Elevator Industry ("Petitioners") moved this Court both to appoint an impartial umpire to resolve a dispute between Petitioners and the Union Trustees of the JATP ("Respondents") concerning the administration of the JATP, and to award attorneys' fees, costs, and disbursements. In an Opinion & Order dated January 10, 1996, this Court granted Petitioners' motion to appoint an impartial umpire, but deferred both appointing an impartial umpire, and ruling on the issue of attorneys' fees pending supplementary submissions from the parties on each issue. *Citrin v. Erikson*, 911 F.Supp. 673, 687–89 (S.D.N.Y.1996) ("January 1996 Opinion"). The instant Opinion & Order resolves the issues left open in this Court's *January 1996 Opinion*.

Petitioners ask this Court: (1) to award attorneys' fees, costs, and disbursements; (2) to order that the JATP Trust Fund be used to reimburse Petitioners' attorneys' fees, costs, and disbursements; and (3) to select an impartial umpire to resolve the parties' dispute from the list of impartial umpires submitted by the parties. In response, Respondents argue that: (1) this Court should not award Petitioners attorneys' fees, costs, or disbursements; (2) if this Court does award Petitioners attorneys' fees, these fees should be paid from the JATP Trust Fund; and (3) this Court should select an impartial umpire to resolve the parties' dispute from the list of impartial umpires submitted by the parties. For the reasons discussed below, this Court grants both Petitioners' motion for attorneys' fees and the parties' request that Petitioners' attorneys' fees be paid from the JATP Trust Fund, and this Court appoints an impartial umpire from the lists submitted respectively by the parties.

## BACKGROUND

The petition underlying the motions currently pending before this Court concerned the administration of a trust fund established pursuant to the LMRA and ERISA. *Citrin*, 911 F.Supp. at 675. Sections 302(c)(5)–(6) of the LMRA authorize employee benefit trust funds for the purpose of "defraying costs of apprenticeship or other training programs." 29 U.S.C. § 186(c)(5)–(6); *Citrin*, 911 F.Supp. at 679. ERISA defines an "employee welfare benefit plan" as any plan, fund, or program established or maintained by an employer, an employee organization, or by both, for the purpose of providing its participants or their beneficiaries with "apprenticeship or other training programs, ... or ... any benefit described in section 302(c) of the Labor Management Relations Act...." 29 U.S.C. § 1002(1)(A)–(B); *see Citrin*, 911 F.Supp. at 679.

The JATP trust fund was created and is jointly administered by the Elevator Industries Association, Inc. ("the Association") and Local Union No. 3 of the International Brotherhood of Electrical Workers ("the Union"). *Citrin*, 911 F.Supp. at 675–76. Pursuant to the collective bargaining agreement between the Association and the Union, in 1976, the parties entered into a trust agreement that created the Joint Apprenticeship Training Program. *Id.* at 676; *see* (Trust Agreement Creating the Joint Apprenticeship and Training Program for the Elevator Industry ("JATP Trust Agreement")). As set forth in the JATP Trust Agreement, the JATP established an apprentice school

> for the benefit of the elevator industry and to help meet its staffing needs by providing and maintaining training and/or retraining programs for the benefit of Employees, or persons who wish to become Employees, ... and to devise and implement such programs as may be necessary from time to time to fulfill these objectives.

*Id.* (quoting JATP Trust Agreement Art. III, ¶ 3.1).

Approximately one year before Petitioners applied to this Court, a dispute arose between the Association Trustees and the Union Trustees over the commencement of a new JATP apprenticeship class. *Id.* The Association Trustees attempted to commence a new first-year JATP apprenticeship class according to the terms of the JATP Trust Agreement. The Union Trustees refused to give their consent to the commencement of a new JATP class "unless and until a long-standing provision of the collective bargain-

ing agreement between the Union Trustees and the Association Trustees [was] changed." *Id.* Petitioners' made several attempts to break the Trustees' deadlock on their own, but Respondents continued to withhold both their consent to the commencement of a new JATP class and their cooperation in resolving the deadlock concerning the new JATP class. *Id.* at 676–77.

In an effort to resolve this dilemma, Petitioners applied to this Court to appoint an impartial umpire to break the Trustees' deadlock, pursuant to LMRA section 302(c), 29 U.S.C. § 186(c)(5)(B). *Id.* at 677. Section 302(c) of the LMRA mandates the selection of an impartial umpire in the case of an unresolvable disagreement among trustees of a benefit fund, and provides that, in the event the trustees are unable to agree upon an umpire, they may petition the district court to appoint one for them. 29 U.S.C. § 186(c)(5)(B); *Citrin,* 911 F.Supp. at 680. Petitioners asserted that this Court had jurisdiction over their petition under section 302 of the LMRA, 29 U.S.C. § 186(c), section 502 of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1337. *Citrin,* 911 F.Supp. at 677. Petitioners claimed that they had satisfied each of the prerequisites for petitioning a district court under LMRA section 302(c). *Id.* at 680. Specifically Petitioners argued that their dispute constituted a genuine deadlock on an issue of the JATP Trust administration, that no agreed neutral person was available to break the impasse, and that the parties had failed to agree on an impartial umpire. *Id.* Respondents opposed the petition, and maintained that Petitioners had failed to satisfy the prerequisites for petitioning this Court pursuant to LMRA section 302(c). *Id.* at 677–78.

After reviewing the parties' respective claims, the documents controlling the parties' relationship, and the JATP Trust Agreement, this Court ruled in favor of Petitioners. *Id.* at 687–88. This Court found that it had jurisdiction over the petition under all three statutes that Petitioners had advanced in support of their petition. *Id.* at 679–80. This Court further found that Petitioners had satisfied the prerequisites for petitioning a federal court for an impartial umpire pursu-

ant to LMRA section 302(c), *id.* at 687–88, and that Respondents arguments to the contrary were meritless. *Id.* at 683, 687–88. Consequently, this Court ruled in favor of Petitioners and ordered that the parties "each shall submit to this Court in writing the names of ten (10) persons proposed as umpire, indicating by number their priorities of choice." *Id.* at 688. This Court further ordered that "[e]ach person on each list must be eligible to serve as a trustee according to the criteria and the restrictions set forth in Article VII, paragraph 7.2 of the [JATP] Trust Agreement and Article VIII of the [JATP] Trust Agreement." *Id.* In addition, this Court stated that

> [a]lthough this Court will examine the parties' respective submissions, this Court retains complete authority and discretion to appoint an umpire, and this Court is in no way bound to select an impartial umpire from these submissions. This Court has permitted the parties to submit lists of names merely as a courtesy to the parties and as a means to resolve this dispute quickly. Ultimately, however, the selection of an appropriate impartial umpire is a matter solely left to this Court's discretion.

*Id.* The Court also ordered that "[t]he JATP Trustees shall apply the JATP Trust Fund to pay for the reasonable costs and expenses of retaining the impartial umpire in accordance with Article III, paragraph 3.3 of the Trust Agreement." *Id.*

Regarding petitioner's motion for attorneys' fees, this Court found that "although section 302 of the LMRA does not authorize a court to award attorneys' fees in an action based solely on its authority, section 502(g) of ERISA does." *Id.* at 688 (citations omitted). Because Petitioners had properly invoked this Court's jurisdiction under ERISA section 502, this Court held that Petitioners were eligible to request attorneys' fees from this Court. *Id.* at 688–89. This Court then noted that the Second Circuit has set forth five factors that courts must weigh when considering an application for attorneys' fees. *Id.* This Court found, however, that it "lack[ed] sufficient factual information to make a specific finding regarding each of the five elements that this Court must consider

in order to resolve the issue of attorneys' fees," and deferred consideration of the issue pending the parties' respective submissions of supplemental memoranda of law addressing this topic. *Id.*

### DISCUSSION

Since this Court issued its *January 1996 Opinion,* Petitioners and Respondents have timely submitted both their respective lists of persons proposed as umpire and their respective memoranda of law regarding the issue of attorneys' fees. This Court in turn will address each issue.

### I. *Appointment of an Impartial Umpire*

In accordance with this Court's *January 1996 Opinion,* Petitioners and Respondents each have submitted to this Court lists of persons proposed as umpires. Each parties' respective list provides the names of ten individuals selected from the American Arbitration Association's ("AAA") panel of labor neutrals, together with each person's biography. *See* (Letter and Submission from Norman Rothfeld, Esq., to the Honorable David N. Edelstein, United States District Judge ("Rothfeld Letter & Submission") (Jan. 22, 1996) (on file with Clerk of the Southern District of New York)); (Letter and Submission from Michael J. DiMattia, Esq., to the Honorable David N. Edelstein, United States District Judge ("DiMattia Letter & Submission") (Feb. 9, 1996) (on file with Clerk of the Southern District of New York)). Two of the ten names proposed by each party appear on both parties respective lists. (Rothfeld Letter & Submission); (DiMattia Letter & Submission).

As this Court previously noted both in its *January 1996 Opinion* and above, "this Court retains complete authority and discretion to appoint an impartial umpire," and "[t]his Court permitted the parties to submit lists of names merely as a courtesy to the parties and as a means to resolve this dispute quickly." *Citrin,* 911 F.Supp. at 688. In its discretion, this Court finds that it is appropriate to select an impartial umpire from the lists submitted by the parties in the instant case for the following four reasons.

First, all of the persons whom the parties respectively propose as umpire are trained arbitrators experienced in the field of labor law. The parties' respective lists contain the names of ten individuals selected from the AAA's panel of labor neutrals. *See* (Rothfeld Letter & Submission); (DiMattia Letter & Submission). In order to qualify as an AAA arbitrator, an individual must have at least ten years experience in the field of law in which he wishes to serve as arbitrator, must be selected by the AAA after an application procedure that includes resume screening and an interview, and must successfully complete AAA arbitration training. Because all the individuals proposed as umpire by the parties are on the AAA's panel of labor neutrals, this Court finds that they are sufficiently experienced and qualified to serve as an impartial umpire in the instant labor dispute.

Second, the individuals proposed as umpire by the parties fulfill the requirements set forth in the JATP Trust Agreement for serving as trustee. In this Court's *January 1996 Opinion,* this Court ordered that each person proposed as umpire by each party "must be eligible to serve as trustee according to the criteria and the restrictions set forth in Article VII, paragraph 7.2 of the Trust Agreement and Article VIII of the Trust Agreement." *Citrin,* 911 F.Supp. at 688. The list of persons proposed as umpires submitted by each party indicates that all candidates satisfy these qualifications. Accordingly, selecting an individual from these lists is an appropriate exercise of this Court's discretion.

Second, the parties agree upon individuals who would be suitable to serve as impartial umpire to resolve their dispute. The parties respective lists of persons proposed as umpire reveal that the parties agree that either of two individuals would be an appropriate impartial umpire in this case. This Court finds that it is appropriate to appoint an umpire upon whom the parties agree.

Finally, selecting an impartial umpire from the lists of names submitted by the parties is an efficient use of this Court's resources. As previously discussed, the individuals proposed as umpire by each party are experienced in the field of labor law, are qualified

arbitrators, and fulfill the requirements set forth in the JATP Trust Agreement for serving as trustee. By selecting one of the candidates proposed by both Petitioners and Respondents, this Court avoids repeating the same detailed background checks that the parties already have completed, and makes efficient use of this Court's valuable time and limited resources. This Court finds that such selection advances this Court's stated goal of "resolving this dispute quickly." *Id.*

■] For the reasons stated in the foregoing discussion, this Court finds that it is an appropriate exercise of this Court's discretion to select an impartial umpire from the parties' respective lists of persons proposed as umpire. As previously discussed, Petitioners and Respondents both suggest two of the same candidates to serve as impartial umpire, and have provided this Court with each candidate's resume. This Court has reviewed these resumes, and finds that candidate Jay Nadelbach, Esq. ("Nadelbach") should be appointed as impartial umpire to cast the vote that will resolve the parties pending dispute.

According to his resume, Nadelbach is qualified to serve as impartial umpire in the instant case. He is knowledgeable about issues pertaining to labor disputes, such as contract interpretation, wages, salary, promotion, and seniority. He has extensive experience arbitrating labor disputes—he is a permanent labor arbitrator for two school districts, the New York City Health and Hospital Corporation, the New York State Education Department, and several organized labor organizations; he also serves as designated grievance mediator in New York City's publicly-funded day care industry. He is a member of numerous professional associations, including the New York State Bar Association, the ABA, the New York Office of Collective Bargaining, and the Society of Professionals in Dispute Resolution. Furthermore, Nadelbach is a member if the New York State Bar. Based on his experience, qualifications, and the parties' mutual approval, this Court finds that Jay Nadelbach, Esq., is suitably qualified to weigh the parties competing claims regarding the commencement of a new JATP apprenticeship class, and to cast the deciding vote to break this deadlock. Accordingly, this Court appoints Jay Nadelbach, Esq. to serve as impartial umpire in the instant case.

## II. Attorney's Fees

The second issue left open by this Court's *January 1996 Opinion* is Petitioners' motion for attorneys' fees, costs, and disbursements. Petitioners and Respondents each have submitted to this Court a memorandum of law as well as several supplemental documents addressing: (1) the propriety of granting Petitioners' motion; (2) the amount of attorney's fees that this Court should award to Petitioners; and (3) the source from which such payment should come. This Court addresses each issue individually.

### A. Petitioners Merit an Award of Attorneys' Fees

■] In both their original petition and their subsequent supplemental submissions to this Court, Petitioners request that this Court award them attorneys' fees, costs, and disbursements. *Citrin,* 911 F.Supp. at 688–89; (Petitioners' Attorneys' Fees Application ("Petitioners' Application") 1–3 (Jan. 19, 1996).) Although section 302 of the LMRA does not authorize a court to award attorneys' fees in an action based solely on its authority, *id.; see Fase v. Seafarers Welfare & Pension Plan,* 79 F.R.D. 363, 366 (S.D.N.Y.1978), section 502(g) of ERISA does. 29 U.S.C. § 1132(g). As this Court held in its *January 1996 Opinion,* Petitioners properly invoked this Court's jurisdiction under ERISA section 502 and, consequently, are eligible to request attorneys' fees. *Citrin,* 911 F.Supp. at 688–89.

■ In relevant part, section 502(g) provides that "[i]n any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorneys' fees and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Second Circuit recognizes that the attorneys' fee provision of ERISA is remedial legislation that "must be liberally construed" in order to vindicate the rights and protect the interests of those persons it is meant to protect, namely participants in and beneficiaries of pension

and welfare plans. *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987); *see Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991); *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589–90 (9th Cir.1984); *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1356 (8th Cir.1980); *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 875, 890 (S.D.N.Y.1994), *aff'd*, 60 F.3d 956 (2d Cir.1995); *Rice v. Rochester Laborers' Annuity Fund*, 888 F.Supp. 494, 500 (W.D.N.Y. 1995); *Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180, 182 (W.D.N.Y.1980).

▪ In the Second Circuit, the decision to award attorneys' fees is based on five factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award for attorneys' fees; (3) whether an award of attorneys' fees would deter others from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the parties requesting attorneys' fees sought to confer a common benefit on an ERISA plan's participants and beneficiaries. *Chambless*, 815 F.2d at 871; *see New York State Teamsters Council v. Estate of DePerno*, 18 F.3d 179, 181 (2d Cir.1994); *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 602 n. 9 (2d Cir.1983); *Mendez v. Teachers Ins. & Annuity Ass'n*, 789 F.Supp. 139, 140–41 (S.D.N.Y. 1992).

▪ Although the awarding of attorneys' fees "is discretionary, not mandatory," *Fase*, 589 F.2d at 116; *see International Brotherhood of Teamsters, Joint Council 18 v. New York State Teamsters Council Health & Hospital Fund*, 903 F.2d 919, 923 (2d Cir.1990), the Second Circuit favors awarding attorneys' fees to prevailing plaintiffs in ERISA cases "in the absence of some particular justification for not doing so." *Birmingham v. SoGen–Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir.1983); *see Chambless*, 815 F.2d at 871 (holding that it was an abuse of discretion to refuse to award attorneys' fees where each element of five part test has been satisfied); *Rice*, 888 F.Supp. at

500. Regardless of the result a court reaches on a motion for attorneys' fees, "a district court should make specific findings regarding the matter." *Joint Council 18*, 903 F.2d at 924.

Petitioners and Respondents address each part of the *Chambless* test in their respective papers. Petitioners maintain that their claim for attorneys' fees satisfies all five factors of the *Chambless* test. (Petitioners Application at 3.) Respondents assert two alternative claims regarding this issue. First, in the event that this Court orders that Petitioners attorneys' fees be paid from the JATP Trust Fund, Respondents do not contest Petitioners' motion for attorneys' fees. (Respondents' Memo at 2.) Alternatively, if this Court finds that Respondents themselves must reimburse Petitioners' attorneys' fees, Respondents argue that Petitioners satisfy none of the elements of the *Chambless* test. (Respondents' Memorandum Concerning Petitioner's Attorneys' Fees ("Respondents' Memo") 2–7 (Jan. 19, 1996).)

### 1. The Degree of Respondents' Bad Faith or Culpability

▪ *Chambless* commands that a court consider "the degree of the offending party's culpability or bad faith" when evaluating an application for attorneys' fees. *Chambless*, 815 F.2d at 871. "Under ERISA, a plaintiff need not show bad faith to recover attorneys' fees...." *Gennamore v. Buffalo Sheet Metals, Inc.*, 568 F.Supp. 931, 936 (S.D.N.Y. 1983); *Algie*, 891 F.Supp. at 890–91; *see McPherson v. Employees' Pension Plan of American Re–Insurance Co.*, 33 F.3d 253, 256–57 (3d Cir.1994); *Terpinas v. Seafarer's Int'l Union*, 722 F.2d 1445, 1448 (9th Cir. 1984). Instead, a party moving for attorneys' fees may demonstrate that the offending party was culpable or at fault in causing the dispute underlying the motion for attorney's fees, *Algie*, 891 F.Supp. at 890–91; *see Scarso v. Briks*, 909 F.Supp. 211, 215 (S.D.N.Y.1996), or that the offending party acted "arbitrarily and capriciously." *Gennamore*, 568 F.Supp. at 936; *see Sansevera v. E.I. DuPont de Nemours & Co., Inc.*, 859 F.Supp. 106, 117 (S.D.N.Y.1994).

■ This Court finds that Respondents acted culpably during the dispute underlying the instant motion for attorneys' fees by refusing to cooperate with Petitioners when Petitioners attempted to resolve the parties' dispute without resort to the courts. The *January 1996 Opinion* chronicles Petitioners' attempts to resolve the parties' deadlock prior to filing the underlying petition. *Id.* at 676–77. Respondents resisted these attempts and claimed that their refusal to cooperate with Petitioners was justified because Petitioners were responsible for the existence of various problems within the JATP that Respondents "declined to rubber-stamp" by commencing a new JATP class. *Id.* at 677–78; (Respondents' Memo at 2). This Court's *January 1996 Opinion* rejected all of Respondents' proffered justifications for refusing to cooperate with Petitioners, stating that "these alleged problems are neither relevant to this Court's resolution of the instant petition nor are they even claims for which Respondents can seek relief from this Court." *Id.* at 684. By unreasonably refusing to cooperate with Petitioners, Respondents forced Petitioners to resort to this Court. This Court finds that Respondents were thus at fault in causing the instant litigation and that their conduct was culpable.

2. Respondents' Ability to Satisfy an Award for Attorneys' Fees

■ The second element of the *Chambless* test concerns "the ability of the offending party to satisfy an award of attorneys' fees." *Chambless,* 815 F.2d at 871. Respondents argue, and Petitioners concede, that respondents Christopher Erikson and James O'Hara "lack the ability to satisfy an award of attorneys' fees." (Respondents' Memo at 4); (Letter from Michael J. DiMattia, Esq., to the Honorable David N. Edelstein, United States District Judge ("January DiMattia Letter") 1–2 (Jan. 26, 1996) (on file with Clerk of the Southern District of New York)). Respondents explain that Erikson and O'Hara are union employees, that they support their families and pay their bills from their paychecks, and that their respective liquid assets are inadequate to pay Petitioners' requested fees. *Id.* at 4–5. Petitioners elaborate on this issue, stating that "[i]t

has never been the intention of the Petitioners to create a financial hardship for the Respondent Trustees as individuals." (January DiMattia Letter at 2.)

Although "the absence of one of the five factors need not preclude an award of attorneys' fees," *Mendez,* 789 F.Supp. at 141, facts such as those set forth immediately above can be fatal to an application for attorneys' fees, because a favorable judgment against a party with limited financial resources constitutes an "empty victory." *Gennamore,* 568 F.Supp. at 936. In this case, however, there is an alternative source from which Petitioners' attorneys' fees maybe drawn—the JATP Trust Fund. As discussed below, Petitioners may recover their fees from this fund. Accordingly this factor holds little weight in this Court's evaluation of the instant motion.

3. Whether an Award of Attorneys' Fees Would Deter Others from Acting Similarly in Like Circumstances

■ This Court finds that an award of attorneys' fees in the instant case will "deter others from acting similarly in like circumstances." *Chambless,* 815 F.2d at 871. The knowledge that courts are willing to award attorneys' fees against those who unjustifiably frustrate the purpose and the operation of trust funds established pursuant to LMRA section 302(c) and ERISA will dissuade other trust administrators from engaging in the sort of unwarranted conduct that Respondents exhibited in the instant case. *See Pagovich v. Moskowitz,* 865 F.Supp. 130, 139 (S.D.N.Y.1994); *Engineers Jt. Welfare Fund v. B.B.L. Constructors, Inc.,* 825 F.Supp. 13, 18 (S.D.N.Y.1993) ("This court is compelled to award the attorney fees in order to deter, not only defendant, but others from acting similarly under like circumstances in the future."). Moreover, in most cases with "like circumstances," the party that engages in the wrongful conduct faces the prospect of an unfavorable court judgement accompanied by the costs of their own and their adversaries legal fees. *See Gennamore,* 568 F.Supp. at 937. Such costs are a powerful deterrent. Accordingly, this Court finds that the deterrent value of awarding Petitioners attorneys'

fees in the instant case supports Petitioners' motion for attorneys' fees.

### 4. The Relative Merits of the Parties' Positions

■ The merits of the parties' respective positions regarding the underlying petition strongly support Petitioners' motion for attorneys' fees. This Court's *January 1996 Opinion* conducted a detailed inquiry into the merits of both parties' respective positions regarding the underlying petition. The *January 1996 Opinion* found that Petitioners had satisfied the three prerequisites for petitioning a court for an impartial umpire pursuant to LMRA section 302(c). *Citrin*, 911 F.Supp. at 687–88. It further found that Respondents' arguments in opposition to the petition were "wholly unavailing" because they concerned facts and issues that were "neither relevant to this Court's resolution of the instant petition nor [were] they even claims for which Respondents can seek relief from this Court." *Id.* at 684.

Because this Courts' *January 1996 Opinion* found that Petitioners had proved the elements of their case, and that Respondents had opposed Petitioners' case with only meritless and irrelevant claims, this Court now finds that the merits of Petitioners' position in the underlying petition heavily outweigh the merits of Respondents' position in the underlying petition. Accordingly, the relative merits of the parties' respective positions bolster Petitioners' motion for attorneys' fees.

### 5. Whether the Party requesting Attorneys' Fees Sought to Confer a Common Benefit on JATP Beneficiaries

■ Finally, the benefit that Petitioners' action will confer on the JATP and its beneficiaries also supports Petitioners' motion for attorneys' fees. The JATP was "created for the benefit of the elevator industry and to help meet its staffing needs by providing and maintaining training and/or retraining programs for the benefit of the Employees, or persons who wish to become Employees" in the elevator industry. (JATP Trust Art. III, ¶ 3.1) In the underlying petition, Petitioners sought the appointment of a neutral arbitra-

tor to break the JATP Trustees' impasse over the appointment of a first-year apprenticeship class. *Citrin*, 911 F.Supp. at 677. The appointment of an impartial umpire will enable the JATP Trustees to break their deadlocked dispute and will allow the JATP to resume its stated mission. This Court finds that such a result confers a common benefit on those whom the JATP specifically was designed to benefit—the elevator industry, and present and future employees of the elevator industry.

Because all but one of the *Chambless* factors are present in this case, and because Petitioners were forced to petition this Court by Respondents' obstructionist tactics, this Court finds that an award of attorneys' fees is appropriate in this case.

### B. Source of Payment of Petitioners' Attorney's Fees

Petitioners raise the issue of satisfying their fee award from the JATP Trust Fund in both their original petition and the papers they submitted pursuant to this Court's order in the January 1996 Opinion. *Citrin*, 911 F.Supp. at 675–76; (January DiMattia Letter.) Petitioners note that "Respondent Trustees do not have the financial resources to pay for the requested attorneys fees and that they will not be reimbursed for any such expenditures by their employer, Local 3 IBEW...." (DiMattia Letter at 1.) Because "[i]t has never been the intention of the Petitioners to create a financial hardship for the Respondent Trustees as individuals," *id.*, Petitioners request that any attorneys' fees awarded by this Court come from JATP funds. *Id.*; (Petitioners' Application at 11.) Petitioners further argue that "[t]he Association Trustees should not be required to contribute to any portion of the requested fees because [they] did not create the deadlock and did not refuse to appoint an impartial trustee." (Petitioners' Application at 11.)

Respondents claim that "Petitioners may pay their attorneys' fees from the JATP Trust Fund without an order of this Court." (Respondents' Memo at 1.) They contend that Article III, paragraph 3.3. of the JATP Trust Agreement provides that the JATP Trustees shall use and apply JATP trust

funds to make payments "including, payment for the employment of services of such ... legal ... personnel, as may be reasonably required to establish, administer and maintain a well-rounded program of apprenticeship and training...." *Id.* (quoting JATP Trust Agreement, Art. III, ¶ 3.3). Respondents appear to acquiesce to Petitioners' request for attorneys' fees by stating that "the Respondents have never contested and will not now contest any payments for legal fees which Petitioners make to Mr. DiMattia from the JATP Trust Fund." *Id.*

 It is a settled equitable principle that a court may, in its discretion, spread the cost of a lawsuit among those who benefit therefrom. *Morrisey v. Segal*, 526 F.2d 121, 128 (2d Cir.1975) (citing *Mills v. Electric Auto–Lite*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)). Moreover, courts have both the power and the duty to fashion remedies in trust cases that are most advantageous to the trust's participants and beneficiaries, and most conducive to effectuating the purposes of the trust. Restatement (Second) of Trusts, § 205 cmts. a–b (1959). This principle extends to the payment of attorneys' fees incurred for the purpose of conferring a benefit on the trust's participants and beneficiaries. *See Morrisey*, 526 F.2d at 128–29; *Weidlich v. Comley*, 267 F.2d 133, 134 (2d Cir.1959); *Carter v. Montgomery Ward*, 76 F.R.D. 565, 570 (E.D.Tenn.1976).

 In the instant case, this Court found that Petitioners brought their petition to this Court in order to break the JATP Trustees' impasse regarding an issue of trust administration. *Citrin*, 911 F.Supp. at 677. As discussed above, this Court further found that both the purpose and the result of Petitioners' petition was to allow the JATP to resume its stated mission and to benefit those whom the JATP specifically was designed to benefit—the elevator industry, and present and future employees of the elevator industry. Moreover, as Respondents claim, the JATP Trust Agreement authorizes the JATP Trustees to use and apply the JATP Trust Fund "[t]o pay, or provide for the payment of all reasonable and necessary expenses incurred in the ... administration ... of the Plan and Trust Fund, including, but

not limited to payment for the employment or services of such ... legal ... personnel as may be reasonably required to establish, administer, and maintain [the JATP]." (JATP Trust Agreement Art. III, ¶ 3.3); (Respondents' Memo at 1). Accordingly, this Court finds that Petitioners' fee award may be satisfied from the JATP Trust Fund.

## C. Calculation of Attorney's Fees

 According to the Second Circuit, "once a district court determines that a party has prevailed upon a motion for attorneys' fees, it must calculate what constitutes a reasonable attorneys' fee." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992). The determination of what constitutes reasonable attorneys' fees is governed by the "lodestar" approach. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989); *Grant*, 973 F.2d at 99. Under this approach, "the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals." *Grant*, 973 F.2d at 99; *see Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In the event the amount of attorneys' fees is contested, "the party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989).

 To establish the number of hours reasonably expended on a litigation, the party seeking an award of attorney's fees "must document the application with contemporaneous time records" that specify "the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983); *see Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986). Courts recognize that "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy [this requirement] and suffice to permit recovery of attorneys' fees," as do "typewritten transcriptions of the original handwritten time sheets filled out by attorneys...." *David v. Sullivan*,

777 F.Supp. 212, 223 (E.D.N.Y.1991); *see Johnson v. Kay*, 742 F.Supp. 822, 837 (S.D.N.Y.1990); *Carrero v. New York City Housing Auth.*, 685 F.Supp. 904, 908–909 (S.D.N.Y.1988); *Lenihan v. City of New York*, 640 F.Supp. 822, 824 (S.D.N.Y.1986)

■ An attorney's reasonable hourly rate is determined by analyzing the " 'prevailing market rates in the relevant community.' " *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir.1987) (quoting *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). In this circuit, a district court determines prevailing market rate by examining the parties' submissions regarding "the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.' " *Miele*, 831 F.2d at 409 (quoting *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11). A judge may also "rely in part on the judge's own knowledge of private firm hourly rates in the community." *Miele*, 831 F.2d at 409.

In the instant case, Petitioners have submitted the declaration of their lead counsel, Michael J. DiMattia, Esq. ("DiMattia"), a copy of the "computer printouts which are made and kept for each of [his] clients, and contemporaneously entered in the ordinary course of business," and a listing of the hourly rates for the attorneys and paralegals who worked on the instant case. (Declaration of Michael J. DiMattia, Esq., ("DiMattia Declaration") Exs. A & B (Jan. 19, 1996).) Petitioners seek attorneys' fees and disbursements in the amount of $15,396.48 for the initial petition submitted to this Court and $1,610.00 for the cost of preparing the instant application and supporting papers for a total of $17,006.48. (DiMattia Declaration at 2 & Ex. A; Petitioners' Application at 12.) They assert that their attorneys' expended 69.00 hours reviewing the JATP Trust Agreement, conferring with opposing counsel, researching and drafting the petition to request a court-appointed impartial umpire, and preparing supplemental submissions to this Court. (DiMattia Declaration Ex. A.) They also state that their attorneys spent 7.80 hours preparing the instant fee application.

*Id.* Petitioners further provide the following hourly rates for the attorneys and paralegals who worked on their case: Michael J. DiMattia—$250.00 per hour; Donald S. Krueger—$200.00 per hour; paralegals—$80.00 per hour. *Id.* Ex. B.

Respondents contest the adequacy of Petitioners' documentation of Petitioners' counsels' billing information and fee calculation. (Declaration of Norman Rothfeld, Esq., ("Rothfeld Declaration") 1–2 (Jan. 31, 1996).) Respondents claim that, following Respondents' counsels' examination of the time sheets submitted by DiMattia, Respondents' counsel called DiMattia and "asked him whether he kept a diary." *Id.* at 1. According to Respondents' counsel, DiMattia replied that he did keep a diary. *Id.* When Respondents' counsel then asked whether he could inspect this diary, DiMattia stated that he would "get back" to Respondents' counsel, but never did. *Id.* By presenting these facts to this Court, Respondents suggest that Petitioners' failure to produce contemporaneous diary records is fatal to their claim for attorney's fees.

Respondents also dispute four entries in the billing records that Petitioners submitted in support of their application for attorneys' fees. They challenge four, unspecified time entries that document phone conversations between the parties' respective counsels. *Id.* Respondents claim that these conferences "did not relate to the instant proceeding but related to arbitration proceedings which Local 3 has scheduled against members of the Elevator Industries Association. . . ." *Id.*

Petitioners contest these claims. They argue that Respondents' argument that Petitioners' fee application is deficient because it does not attach actual time diary entries "is simply wrong and should be rejected." (Letter from Michael J. DiMattia, Esq., to the honorable David N. Edelstein, United States District Judge 2 (Feb. 2, 1996) (on file with Clerk of the Southern District of New York).) Petitioners also explain that nine of the time sheet entries reflect telephone conferences between Petitioners' and Respondents' respective counsels, and assert that all nine conferences concerned the instant petition. *Id.* at 2. They further highlight that

Respondents identify neither which four of these nine entries they challenge, nor the individual attorney from Petitioners' counsel's office who was involved in the conversation. *Id.* at 1–2.

■ Having reviewed Petitioners' submission in light of the parties' competing claims and the applicable case law, this Court finds that Petitioners' merit the $17,006.48 attorneys' fees they request for three reasons. First, despite Respondents' claims to the contrary, this Court finds that Petitioners' documentation of their attorneys' fees satisfies this circuit's contemporaneous-record requirement. Petitioners did not the submit the original, handwritten time sheets filled out by their attorneys on a daily basis, but submitted instead the computer-generated billing records that Petitioners' law firm contemporaneously creates in the ordinary course of business. Courts routinely receive and accept computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers, and the law is clear that such records satisfy the contemporaneous-record requirement. *David,* 777 F.Supp. at 223; *Lenihan,* 640 F.Supp. at 824.

■ Second, this Court finds that Petitioners' attorney reasonably expended 69.00 hours preparing the underlying petition, and 7.80 hours preparing and the instant application for attorneys' fees. As mentioned above, Petitioners submitted detailed records of the amount of time that their attorneys and paralegals spent performing the various tasks necessary to file Petitioners' petition and application for fees with this Court. This Court has reviewed these records and finds that they are reasonable in view of the complex facts of the instant case, the intricate statutory framework of ERISA and the LMRA, and the lengthy collective bargaining agreement and JATP Trust Agreement that govern the parties relationship. Respondents only challenge to Petitioners' submission is that four entries in these records do

not relate to the instant proceeding.[1] Respondents, however, have not met their burden of demonstrating that a reduction of Petitioners' fee award is justified, *USFL v. NFL,* 887 F.2d at 413, because they not only fail to. specify the dates of the entries they challenge, but also fail to provide any evidence in support of this claim. A review of Petitioners' records also reveals no evidence supporting Respondents' claim. Accordingly, this Court finds. that the figures that Petitioners submitted to this Court constitute a reasonable amount of time expended on this litigation.

■ Third, this Court finds that the paralegal and attorneys' hourly rates charges by Petitioners' attorneys are reasonable. Petitioners provided this Court with a list of the hourly rates charged by the two attorneys and the paralegals who worked on Petitioners case. Respondents have neither contested these figures nor addressed the issue of what is the "the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Miele,* 831 F.2d at 409 (quoting *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11). According to the Second Circuit, this Court may determine reasonable hourly rates based on this Court's knowledge of the prevailing community rates. *Id.; see Algie,* 891 F.Supp. at 895; *Helbrans v. Coombe,* 890 F.Supp. 227, 233–34 (S.D.N.Y.1995); *Loper v. New York City Police Dept.,* 853 F.Supp. 716, 719–20 (S.D.N.Y.1994). Courts in this circuit have noted that rates such as those charged by Petitioners' lawyers and paralegals in the instant case are reasonable. *See Helbrans,* 890 F.Supp. at 233–34; *Loper,* 853 F.Supp. at 719–20; *Stewart v. Barclay's Bus. Credit,* 860 F.Supp. 150, 151 (S.D.N.Y.1994), *aff'd* 54 F.3d 766 (1994); *David,* 777 F.Supp. 212. Accordingly, this Court finds that the hourly rates charged by Petitioners' law firm in the instant case are reasonable.

### CONCLUSION

IT IS HEREBY ORDERED THAT Jay Nadelbach, Esq. is appointed impartial um-

---

1. Respondents also claim that the fact that Petitioners' counsel's time sheets identify his client as Elevator Industries Association, Inc. ("EIA"), not Petitioners, the Association Trustees of the JATP, is a defect in Petitioners' submission. (Respondents' Memo at 2.) As this Court stated in its *January 1996 Opinion,* Petitioners are the trustees appointed to the JATP by the EIA. *Citrin,* 911 F.Supp. at 675–76. Consequently, this Court finds that Respondents' claim is irrelevant.

pire to resolve the parties deadlocked dispute regarding the commencement of a new first-year apprenticeship class; and

IT IS FURTHER ORDERED THAT Petitioners' application for attorneys' fees in the amount of $17,006.48 is GRANTED; and

IT IS FURTHER ORDERED THAT Petitioners' attorneys' fees be paid from the JATP Trust Fund.

SO ORDERED.